941 So.2d 1182 (2006)
William RUGER, Appellant,
v.
STATE of Florida, Appellee.
No. 4D04-4372.
District Court of Appeal of Florida, Fourth District.
October 25, 2006.
Rehearing Denied December 6, 2006.
*1183 Carey Haughwout, Public Defender, and Anthony Calvello, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
We affirm William Ruger's convictions for second degree murder with a weapon, grand theft, and two counts of uttering a forgery. He claims that the court erred in denying his Nelson[1] challenge, in rejecting his peremptory challenge to a juror, in denying a motion for mistrial based upon improper impeachment of his character, and by allowing the jury to convict him of an enhanced felony without finding the use of a weapon element beyond a reasonable doubt. On all issues we affirm.
Ruger was charged with the murder of Clifford Morrison, who was found dead in his home. Morrison had sustained a stab wound to the chest and blunt force trauma. The principal witness against Ruger was Naomi Smith, who pleaded guilty to second degree murder for her involvement in Morrison's death. Smith testified that she had known Ruger for over three years, having met him in Buffalo, New York, while she was working as a prostitute. The prosecutor asked her how she got together with Ruger and Smith answered, "[F]rom my understanding he had just recently got out of prison." The defense objected and moved for a mistrial. The trial court denied the motion for mistrial, but gave a curative instruction.
Smith then revealed that their relationship began with drugs and sex but evolved into a romance. Once they became romantically involved, Smith quit working as a prostitute because Ruger took care of her. However, in order to support the both of them, Ruger worked as a male prostitute.
In 2001, they moved to Florida and the two lived in a series of hotels. Eventually, as Ruger was running out of money, Smith began working as a stripper and the two spent their money on crack cocaine, which they used every day. One evening, Ruger told Smith that he had met a man (Morrison) at a gay bar while posing as a male prostitute. Morrison took Ruger back to his house. Ultimately, Morrison paid Ruger to work around his house. Six or seven days later, Morrison was killed when Ruger went to collect the money Ruger claimed Morrison owed him. When Morrison did not have the money Ruger expected, Ruger beat him until he became limp. Ruger then obtained a kitchen knife and stabbed Morrison in the chest. Smith helped Ruger clean up the scene. Before leaving the house, Ruger took Morrison's checks, credit cards, and wallet. He later took Morrison's vehicle. Smith and Ruger tried to cash Morrison's checks without success. However, they were able to withdraw money from an ATM machine and *1184 used it to stay in a hotel and smoke crack cocaine. Ultimately, the police arrested both of them. On cross-examination, Smith acknowledged that her initial statement to the detectives was substantially different from her testimony at trial.
After hearing the evidence, including Smith's detailed testimony, the jury convicted Ruger of second degree murder, two counts of uttering a forged instrument, and grand theft. He appeals his convictions.
Ruger first claims that the court reversibly erred in failing to grant his motion to discharge appointed counsel, because his allegations of ineffective representation at the Nelson hearing went unrebutted. Assuming, without deciding, that the proceedings were legally inadequate, any failings in the court's Nelson inquiry were mooted by his expressions of satisfaction with his counsel after the jury retired to deliberate. See Scull v. State, 533 So.2d 1137, 1140-41 (Fla.1988).
In selecting the jury, defense counsel exercised a peremptory challenge on an African-American juror. When asked by the state to provide a race-neutral explanation for the challenge, defense counsel mentioned the juror's body language as indicating that she was not being open and honest with counsel in her answers. The trial court immediately determined that, although the reason was race-neutral, the strike was not genuine because other jurors were exhibiting the same type of body language and defense counsel did not strike those jurors. In conducting the three-step inquiry under Melbourne v. State, 679 So.2d 759 (Fla. 1996), one relevant circumstance to the "genuineness" inquiry is a finding that the asserted reason for the challenge was equally applicable to unchallenged jurors. Id. at 764 n. 8. Here, the court made such a finding. Furthermore, defense counsel's alternate reason for the challengethat he was getting "bad vibes" from the juroris also insufficient to justify the strike. "[T]he case law is clear that a `feeling' about a juror is not a valid, neutral reason to exercise a strike, absent support in the record." Daniel v. State, 697 So.2d 959, 961 (Fla. 2d DCA 1997). We conclude that the court did not abuse its discretion in denying the peremptory challenge.
During trial, Ruger's counsel objected to the testimony by Smith that she had met Ruger after he had "just recently got out of prison." The court gave a curative instruction but denied the motion for mistrial, which Ruger claims is error.
"A ruling on a motion for mistrial is within the sound discretion of the trial court." Cole v. State, 701 So.2d 845, 853 (Fla.1997). "A motion for mistrial should be granted only where it is necessary to ensure that the defendant receives a fair trial." Power v. State, 605 So.2d 856, 861 (Fla.1992). In Cole, our supreme court held that a witness' statement that he "knew some history" on the defendant, which apparently referred to the defendant's prior criminal history, was not so prejudicial as to require reversal. 701 So.2d at 853. The court emphasized that the reference was isolated and inadvertent, and was not focused upon. Id.
A case closely analogous to the instant case is Ferguson v. State, 417 So.2d 639 (Fla.1982). There, the witness testified that the defendant knew the person who allegedly orchestrated the killings because "my first time in prison, all three of us was together." Id. at 642. The trial court overruled a general objection and denied a motion for mistrial. The supreme court observed that the statements concerning the prior imprisonment of a defendant "may be erroneously admitted yet not be so prejudicial as to require reversal." Id. *1185 The supreme court approvingly cited Smith v. State, 365 So.2d 405 (Fla. 3d DCA 1978), for the proposition that any prejudice arising from the admission of testimony indicating a defendant's prior incarceration could have been corrected by an instruction to the jury to disregard the testimony. Thus, the court in Ferguson held that the testimony was not so prejudicial as to warrant a reversal.
In this case, Ruger's trial counsel conceded that Ms. Smith's comment was not anticipated by the state. The comment was brief, isolated, and inadvertent. It was hardly more prejudicial than the tawdry evidence of prostitution and drug use about which Smith also testified. The trial court sustained the objection and gave a curative instruction, which was more than occurred in Ferguson. Moreover, the comment was cumulative of other evidence. Morrison's mother was allowed to testify without objection that her son told her he had hired someone who had just gotten out of jail. Accordingly, the trial court did not abuse its discretion in denying the motion for a mistrial.
Finally, Ruger claims that the court committed fundamental error because although the court instructed the jury based upon the standard jury instructions, the instructions merely required the jury to "find" that he used a weapon in order to find him guilty of second degree murder with a weapon. Ruger maintains that the trial court's instructions allowed the jury to find the existence of this weapon enhancement element on a burden of proof less than the "beyond a reasonable doubt" standard. We think this contention of error is meritless. The general instruction on reasonable doubt provides, in pertinent part: "The defendant has entered a plea of not guilty. This means you must presume or believe the defendant is innocent. The presumption stays with the defendant as to each material allegation in the Information, through each stage of the trial unless it has been overcome by the evidence to the exclusion of and beyond a reasonable doubt." (Emphasis added). This instruction tells the jury to apply the same burden of proof to all aspects of the case which the state is required to prove. Considering the instructions as a whole, they are not error, let alone fundamental error.
For the foregoing reasons, we affirm the convictions and sentences.
KLEIN and GROSS, JJ., concur.
NOTES
[1] Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973).