DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DEBBIE O'FLAHERTY-LEWIS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D15-4594

[November 1, 2017]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John Contini and Dennis D. Bailey, Judges; L.T. Case No. 13-011010CF10A.

Carey Haughwout, Public Defender, and Alan T. Lipson, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Rachael Kaiman, Assistant Attorney General, West Palm Beach, for appellee.

GROSS, J.

This is the story of a man who looked for love in the wrong place and ended up as the victim of an extortion plot.

The victim is a doctor. He came to know appellant through a website, ashleymadison.com, which specializes in connecting married people who seek an extramarital affair. After exchanging sexually explicit messages, the doctor and appellant met at a hotel for sex. Afterwards, appellant contacted the doctor about a second date, but he told her he could not see her for a while and expressed guilt about his infidelity.

Appellant became angry. The doctor worried that his wife would find out. In a series of text messages, appellant provided the doctor with his last name, home address, the names and birth dates of his daughters, and the name of his wife.

The doctor had not provided such personal information to appellant.

Multiple times, appellant threatened to tell the doctor's wife about the affair. He begged her not to and asked, "What can I do to make this right?" Ultimately, appellant suggested that he pay off her $7,000 credit card bill, stating, "You're gonna pay one way or the other." She refused to give him the actual bill, and said he should pay her directly.

The doctor offered to pay appellant $4,000 up front, with the rest later. Appellant agreed. She texted the doctor an account number to use to deposit money at a bank. He went to the bank with a $4,000 check, but was unable to make the deposit because the bank required the full name of the account holder. By text, the doctor asked appellant for the full name on the account. She refused to provide it, stating she did not trust him.

Hours after the bank closed, appellant texted the doctor a different account number and the name, "Amber Lewis," for making a deposit.

The next morning, the doctor contacted his lawyer who arranged to meet him at the Broward County Sheriff's Office ("BSO"). He provided law enforcement his text messages with appellant and identified her picture. Appellant turned out to be a civilian employee of BSO. Under law enforcement supervision, the doctor made several telephone calls to appellant and arranged to meet her in person.

BSO provided the doctor with an envelope of investigative funds and set up surveillance equipment to record the meeting. After the doctor arrived at the meeting place, he walked over to appellant with the envelope and said, "We're agreeing? This is it. You'll leave me and my family alone?" Appellant responded, "Yeah," and accepted the money. BSO then arrested appellant.

After the arrest, BSO secured appellant's laptop, car, and BSO-issued phone. BSO executed a search warrant on the vehicle; on the front passenger seat was a folder containing (1) a letter addressed to another man, A.D., written from the point of view of a scorned husband and (2) sexually explicit messages between appellant and A.D. The letter accused A.D. of having an affair with appellant after meeting her online. The letter threatened to disclose the affair to A.D.'s wife, his friends, his family and his law firm if he did not pay $15,000. During a follow-up interview, A.D. confirmed to detectives that he had an affair with appellant, but he did not receive the letter and was unaware of any threats.

A forensic analysis of appellant's phone, laptop, and desktop computer revealed that these devices were used to conduct internet searches of both the doctor and A.D. A portion of a document recovered from appellant's car was found on a Word document recovered from appellant's computer.

The state moved to admit *Williams*[1] rule or similar fact evidence—the letter found in appellant's car and the sexually explicit messages between appellant and A.D. After a hearing, the circuit court granted the state's motion. The evidence was introduced at trial.

At trial, the defense sought to downplay appellant's acceptance of money from the doctor by providing an innocent explanation. On closing, the defense attorney argued that the only thing appellant did intentionally was to take "money that was offered to her, not because she threaten[ed] anybody, but because [the doctor] in his anxiety, in his feelings that he had perhaps done something hurtful, offered it to her." It is not extortion for a donee to accept a voluntary gift. In rebuttal, the state pointed to the similarities between the doctor's situation and that of A.D. to show appellant's intent to extort money.

The jury found appellant guilty of extortion as charged. On appeal, appellant argues that the circuit court abused its discretion in admitting the *Williams* rule evidence.

"Similar-fact evidence, otherwise known as *Williams* rule evidence, is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity." *Johnson v. State*, 112 So. 3d 564, 565–66 (Fla. 4th DCA 2013) (internal citation omitted); *see also* § 90.404(2)(a), Fla. Stat. (2015). "In determining the admissibility of collateral crime evidence, the trial court must make two determinations: (1) whether the evidence is relevant or material to some aspect of the offense being tried, and (2) whether the probative value is substantially outweighed by any prejudice." *Ricketts v. State*, 125 So. 3d 194, 195 (Fla. 4th DCA 2013) (quoting *Santiago v. State*, 70 So. 3d 720, 725 (Fla. 4th DCA 2010)).

The *Williams* rule evidence in this case was relevant to prove the state of mind aspect of extortion. The crime of extortion requires that a defendant "maliciously" threaten another "with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will." § 836.05, Fla. Stat. (2015). "Maliciously" means intentionally and without any lawful justification. *Dudley v State*, 634 So. 2d 1093, 1094 (Fla. 2d DCA 1994). "[D]irect evidence of intent is rare, and intent is usually proven through inference." *Manuel v. State*, 16 So. 3d 833, 835 (Fla. 1st DCA 2005). Demonstrating

---

[1] *Williams v. State*, 110 So. 2d 654 (Fla. 1959).

the same type of scheme as existed in this case, the evidence pertaining to A.D. was probative of appellant's state of mind in accepting the money.

Proper use of *Williams* rule evidence is "to refute [a defendant's] theory of defense that he was merely an innocent bystander" to criminal conduct, *Tannihill v. State*, 912 So. 2d 2, 3 (Fla. 4th DCA 2005), to "disprove a defendant's attempt to explain [her own] intent," *Miller v. State*, 667 So. 2d 325, 328 (Fla. 1st DCA 1995), or to show that a defendant "engaged in a plan" to separate victims from their money by a common scheme. *Stav v. State*, 860 So. 2d 478, 481 (Fla. 4th DCA 2003). The seminal case of *Williams v. State* approved the admission of other crimes to establish that, in committing the charged crime, the defendant followed a "plan or pattern" that he had used on other occasions; in a sexual battery case, such evidence "was relevant to meet the anticipated defense of consent." *Williams,* 110 So. 2d at 663.

The *Williams* rule evidence here was probative of appellant's intent because it revealed a scheme where appellant (1) targeted married professional men with financial means, (2) liaised with them through a website specializing in extramarital affairs, (3) acquired personal information about the men over the internet, and (4) threatened them with exposure to secure a monetary payoff. The *Williams* rule evidence did not overwhelm the evidence of the charged extortion such that it transformed into an impermissible character attack on appellant. The trial court did not abuse its discretion in admitting the evidence.

*Affirmed.*

KLINGENSMITH, J., concurs.
CIKLIN, J., concurs specially with opinion.

CIKLIN, J., concurring specially.

I fully agree with the majority's conclusion.

While it is not my intent to be obstreperous, I must take exception with the suggestion that either this victim was seeking or this extortionist was offering "love."

Call it ardor, lechery or lust but love, I dare speculate, was not on anyone's mind.

\*      \*      \*

**Not final until disposition of timely filed motion for rehearing.**