# Supreme Court of Florida

_____

No. SC17-845
_____

**RICO JOHNSON,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

September 6, 2018

POLSTON, J.

Rico Johnson seeks review of the decision of the Fifth District Court of

Appeal in *Johnson v. State*, 215 So. 3d 644 (Fla. 5th DCA 2017), on the ground

that it expressly and directly conflicts with the decision of this Court in *Evans v.*

*State*, 177 So. 3d 1219 (Fla. 2015).[1]  The issue before this Court is whether a

witness who identifies the defendant's voice could establish a prior special

familiarity with the defendant's voice during an ongoing investigation.  As

explained below, we hold that the testifying witness's requisite prior special

---

1. We have jurisdiction.  *See* art. V, § 3(b)(3), Fla. Const.

familiarity with the defendant's voice can be acquired at any time prior to trial. Therefore, we approve the decision of the Fifth District in *Johnson* and recede from *Evans*.

## BACKGROUND

Rico Johnson was charged with conspiracy to traffic in cocaine. The facts of this case are well summarized by the Fifth District's decision:

> In September 2014, the City/County Investigative Bureau in Seminole County (the "CCIB") began investigating the sale and distribution of cocaine that allegedly involved Appellant, co-conspirator Edward Howard, Jr., and more than one hundred other suspects. A wiretap on Howard's telephone allowed the CCIB to record calls and receive data about intercepted phone calls, including the date and time of the call, whether it was an incoming or outgoing call from the wiretapped phone, and the numbers dialed by the wiretapped phone. The investigating agents correlated the suspects' names with phone numbers and video surveillance of them and relayed that information to Agents Matt Scovel, the lead investigative agent, and Kevin Pederson, the administrator of the software system that intercepted the phone calls. During the investigation, Agents Scovel and Pederson listened to thousands of intercepted phone calls involving the suspects.
>
> Based on the intercepted phone calls, the CCIB executed a search warrant at Howard's home on a day it suspected that Appellant would be delivering a supply of cocaine. Although cannabis and cash were found in the home, they found no cocaine. During the search, Agent Scovel spoke with Appellant for approximately five minutes but Agent Scovel "did most of the talking" because Appellant "felt uncomfortable talking to [him]." At the same time, Agent Pederson had a five-minute conversation with Howard, who spoke for approximately half of the time. This was the only time that either agent personally spoke with Appellant or Howard. Based on the intercepted phone calls, sixteen suspects, including Appellant and Howard, were eventually arrested and charged with conspiracy to traffic in cocaine.

At trial, the State called Agents Scovel and Pederson to identify Appellant's and Howard's voices, respectively, on the recorded phone calls. Agent Scovel testified that he recognized Appellant's voice from the intercepted phone calls, their conversation at the time of the search, and a DVD recording of a hearing where Appellant testified for approximately twenty minutes. That recording was not entered into evidence at Appellant's trial or played for the jury. Agent Pederson testified that he recognized Howard's voice from the intercepted phone calls and their conversation at the time of the search. The State later played several phone calls for the jury in which Appellant, Howard, and other suspects allegedly discussed drug transactions in coded terms. According to Agent Scovel's testimony, the coded calls involved discussions between Howard and Appellant, and between Howard and other co-conspirators, about buying and selling cocaine, the amounts of and prices for the cocaine, the availability of buyers, and plans to meet to exchange the cocaine for money.

215 So. 3d at 646. Johnson was convicted of conspiracy to traffic in cocaine and sentenced to 15 years' imprisonment.

On appeal, Johnson argued that the trial court erred in allowing Agent Scovel's lay opinion testimony because Scovel lacked the prior special familiarity to identify Johnson's voice on the recordings under this Court's decision in *Evans*, usurping the function of the jury. *Id.* However, the Fifth District affirmed, concluding that Johnson's reliance on *Evans* was misplaced. The Fifth District reasoned that Scovel's identification testimony met the requirements under *Evans* because he both possessed a prior special familiarity with Johnson's voice and was a witness who heard the crime. *Id.* at 651. The Fifth District concluded that

- 3 -

Scovel's testimony did not invade the province of the jury and held that the trial court did not abuse its discretion in admitting the identification testimony.

## ANALYSIS

Johnson contends that, under the standard for lay opinion testimony in *Evans*, a prior special familiarity with the defendant's voice could not be established once the investigation was ongoing. Although *Evans* supports Johnson's argument, we conclude that we should recede from *Evans*.

"Generally, a lay witness may not testify in terms of an inference or opinion, because it usurps the function of the jury. The jury's function is to determine the credibility and weight of such testimony." *Floyd v. State*, 569 So. 2d 1225, 1231-32 (Fla. 1990) (citation omitted). However, Florida has long recognized the ability of a testifying witness to offer an opinion as to identity. *See Roberson v. State*, 24 So. 474, 478 (Fla. 1898) ("The opinion of a witness as to the identity of a person seen by him is admissible in all cases where the witness has a previous personal acquaintance with or knowledge of such person, and bases his opinion upon such acquaintance or knowledge."). Lay opinion testimony is permissible as to what the witness perceived when:

> (1) The witness cannot readily, and with equal accuracy and adequacy, communicate what he or she has perceived to the trier of fact without testifying in terms of inferences or opinions and the witness's use of inferences or opinions will not mislead the trier of fact to the prejudice of the objecting party; and

(2) The opinions and inferences do not require a special knowledge, skill, experience, or training.

§ 90.701, Fla. Stat. When a witness is previously familiar with a defendant, they are permitted to identify the voice of the defendant as a lay witness. *See State v. Cordia*, 564 So. 2d 601, 602 (Fla. 2d DCA 1990); *Hardie v. State*, 513 So. 2d 791, 792 (Fla. 4th DCA 1987).

The admission of the identification testimony focuses on whether the identification testimony usurps the fact-finding function of the jury. *See Alvarez v. State*, 147 So. 3d 537, 543 (Fla. 4th DCA 2014) ("[N]o record evidence exists which indicates that the detective was in a better position than the jurors to view the highly inconclusive and indiscernible surveillance video and enlarged stills and thereby determine the skin color and races of the perpetrators."); *Ruffin v. State*, 549 So. 2d 250, 251 (Fla. 5th DCA 1989) ("When factual determinations are within the realm of an ordinary juror's knowledge and experience, such determinations and the conclusions to be drawn therefrom must be made by the jury."). When a mere comparison of identification evidence over the course of an investigation is the basis for the prior special familiarity, the identification testimony does not assist the jury in identifying the defendant. *Alvarez*, 147 So. 3d at 543 (finding error when the detective was unable to make the identification until extensively rewatching the video); *Ruffin*, 549 So. 2d at 251 (finding the trial court

erred in allowing identification testimony from three officers who simply viewed the videotape and testified it depicted the defendant).

In *Evans*, this Court addressed whether the trial court erred in permitting a law enforcement officer to offer his opinion that the voice on a 911 recording was that of the defendant. 177 So. 3d at 1228. At trial, the lead detective testified that he recognized the defendant's voice on the 911 recording because he compared it to recorded jail calls between the defendant and family members. *Id.* Because the lead detective based his identification on two recordings of the defendant after the crime was committed, the only basis under which lay identification testimony could be admissible was if a prior special familiarity was established. *Id.* at 1230. This Court determined that "[a] police officer investigating a particular suspect's voice *after the investigation is ongoing*, as in this case, does not constitute the requisite prior familiarity with the suspect." *Id.* at 1230 (emphasis added). Accordingly, this Court concluded that the "detective usurped the role of the jury by being permitted to opine that a voice heard on a 911 call-back recording belonged to the defendant." *Id.* at 1224.

In this case, Agent Scovel's familiarity with Johnson's voice arose as the lead investigative agent who investigated the conspiracy over 100 days, listened to thousands of recorded phone calls, and confirmed Johnson's identity and voice during his in-person interview. Further, the record reflects that Agent Scovel

listened to the phone calls both in real time and after the fact. The jury in this case did not share Agent Scovel's familiarity with Johnson and was not in the same position to assess the identity of the voices on the recorded calls. Additionally, the jury was unable to simply compare the voice on the recorded calls to the DVD of the hearing where Johnson testified because the DVD was not admitted into evidence due to Johnson's objection. Because Agent Scovel had the opportunity to become familiar with Johnson's voice over the course of the conspiracy investigation, Scovel was in a better position to make the identification and his testimony did not invade the province of the jury. Accordingly, the record demonstrates that Agent Scovel possessed a special familiarity with Johnson's voice. However, based on our precedent in *Evans*, Agent Scovel's familiarity established after the investigation was ongoing would prevent him from obtaining the requisite prior special familiarity with a suspect's voice.

However, as Justice Lewis outlined in his dissent in *Evans*, "Florida courts have consistently allowed law enforcement officers to identify the voice of a defendant where the officer has gained familiarity with the voice." 177 So. 3d at 1243 (Lewis, J., dissenting). We agree with the Fifth District's conclusion that in the context of section 90.701, Florida Statutes, a prior special familiarity means that "prior to trial, the identification witness must have gained familiarity with the defendant that assists the witness in identifying him." *Johnson*, 215 So. 3d at 652.

A "prior special familiarity," as explained by the Fifth District in *Johnson*, "involves a witness with some advantage over the jury, gained by personal contact with the defendant, apart from that which the jury could experience in the courtroom." *Id.* at 651. Because allowing voice identification testimony that was acquired during an ongoing investigation is consistent with aiding the jury instead of invading the province of the jury, we now recede from *Evans*.[2] We conclude that a familiarity with a defendant's voice acquired during an ongoing investigation may constitute the requisite prior special familiarity for voice identification testimony. Therefore, the trial court properly allowed Agent Scovel to identify Johnson's voice on the recorded calls and we approve the decision of the Fifth District.

**CONCLUSION**

In summary, because the identification witness may acquire a special familiarity with the defendant's identity at any time prior to trial, we recede from *Evans* and approve the Fifth District's decision in *Johnson*.

It is so ordered.

CANADY, C.J., and LEWIS, LABARGA, and LAWSON, JJ., concur.
PARIENTE, J., concurs in result in part and dissents in part with an opinion, in which QUINCE, J., concurs.

---

2. We conclude that the three-prong test of when we recede from precedent is met. *See Brown v. Nagelhout*, 84 So. 3d 304, 309 (Fla. 2012).

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

PARIENTE, J., concurring in result in part and dissenting in part.

While the rule announced in *Evans v. State*, 177 So. 3d 1219 (Fla. 2015), may have been unnecessarily broad, as applied to other cases like this one, I write to emphasize the significant differences between this case and *Evans*. I further write to urge the trial courts to exercise extreme caution before allowing an investigating police officer to testify to voice identification based on "prior special familiarity," especially where the familiarity comes only after arrest.

While I concur in the result in this case because of the significant factual differences between this case and *Evans*, I dissent from the majority's unnecessarily broad holding that "the testifying witness's requisite prior special familiarity with the defendant's voice can be acquired at any time prior to trial." Majority op. at 1-2. Such a holding opens the door to police officers gaining the requisite "special familiarity" to testify to voice identification based simply on listening to audio recordings created after the defendant has been arrested, which are equally available to the jury.

The differences between this case and *Evans* clearly illustrate this concern. In the case before us, after obtaining a wiretap to investigate a conspiracy to sell and distribute cocaine, Agent Scovel, along with other agents, "listened to thousands of intercepted calls involving the suspects" over 100 days. *Johnson v.*

*State*, 215 So. 3d 644, 646 (Fla. 5th DCA 2017); majority op. at 6. The phone calls were correlated with suspect names, phone numbers, and video surveillance. *Johnson*, 215 So. 3d at 646. In fact, the Fifth District Court of Appeal determined that Agent Scovel was so involved with the crime that he "witnesse[d] . . . the conspiracy as it unfolded." *Id.* at 651.

This extensive investigation formed the basis for Johnson's ultimate arrest, and many of the phone recordings were entered into evidence at trial. It was that extensive investigation of listening to thousands of hours of intercepted phone calls that distinguishes this case from *Evans.* As the Fifth District explained, properly distinguishing *Evans*:

> In *Evans*, the state made the decision not to offer the exemplar telephone recordings into evidence. Had the recordings been admitted, *Evans* would have been directly, factually analogous to *Ruffin* [*v. State*, 549 So. 2d 250 (Fla. 5th DCA 1989),] and *Alvarez* [*v. State*, 147 So. 3d 537 (Fla. 4th DCA 2014)]. The jury would have been able to make the same comparison that was made by the police because the police enjoyed no expertise or special familiarity with the voice. Because the state made the decision not to give the exemplar to the jury, the *Evans* court treated it as an invasion-of-the-province-of-the-jury case. In other words, it would circumvent the intent of the evidence code to allow the state to disadvantage the jury by withholding tangible evidence in its possession so as to justify the use of otherwise inadmissible lay testimony. *Simply put,* Evans *is a case where the police merely compared one recording to another, an exercise that was well within the province of the jury, had it been given the opportunity to do so.*

*Id.* at 650 (footnote omitted) (emphasis added). Where Detective Judy in *Evans* was in no better position than the jury to identify Evans' voice, Agent Scovel's

testimony in this case was not only reliable, but also helpful to the jury by providing information based on familiarity with the crime that the jury could not obtain. *See Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); majority op. at 7.

In receding from *Evans*, the majority announces a new per se rule—that the necessary "prior special familiarity with the defendant's voice can be acquired at *any time prior to trial*"—that could cause additional issues. Majority op. at 1-2 (emphasis added). The majority's new rule subjects criminal defendants to undue prejudice. Under this new rule, theoretically, an officer could listen to recordings outside the courthouse just before trial and then proceed to testify as a voice identification witness based on "prior special familiarity."

Further, the danger of unfair prejudice is a critical issue in any case where a police officer testifies as a lay identification witness based on "prior special familiarity." *See* § 90.403, Fla. Stat. (2017). Not only are there significant "constraints on cross-examination," but the danger of unfair prejudice is exacerbated when police officers testify as lay witnesses identifying the defendant. *Hardie v. State*, 513 So. 2d 791, 793 (Fla. 4th DCA 1987). As this Court explained in *Evans*:

> "[E]rror in admitting improper testimony may be exacerbated where the testimony comes from a police officer." *Martinez v. State*, 761 So. 2d 1074, 1080 (Fla. 2000). "When a police officer, who is generally regarded by the jury as disinterested and objective and therefore highly credible, is the corroborating witness, the danger of improperly influencing the jury becomes particularly grave." *Id.* (quoting

- 11 -

*Rodriguez v. State*, 609 So. 2d 493, 500 (Fla. 1992)). "There is the danger that jurors will defer to what they perceive to be an officer's special training and access to background information not presented during trial." *Charles* [*v. State*, 79 So. 3d [233,] 235 [(Fla. 4th DCA 2012)].

In fact, permitting questions that elicit a witness's position as a police officer when that witness is identifying a defendant's voice or image has been held to be reversible error even when the identification itself was permissible.

177 So. 3d at 1230. Thus, regardless of when the officer forms the prior special familiarity, trial courts must carefully consider the prejudice to which the defendant is subjected by allowing such testimony and limit the testimony accordingly. *See id.* at 1231.

## CONCLUSION

For the reasons explained above, I agree with the majority that, based on the facts of this case, the trial court properly allowed Agent Scovel to identify Johnson's voice based on his "prior special familiarity." However, I dissent from the majority's broad holding that prior special familiarity necessary to admit identification testimony may be acquired any time before trial.

QUINCE, J., concurs.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

Fifth District - Case No. 5D15-2721

(Seminole County)

- 12 -

James S. Purdy, Public Defender, and Matthew Funderburk, Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, Wesley Heidt, Bureau Chief, and Kristen L. Davenport, Assistant Attorney General, Daytona Beach, Florida,

for Respondent