DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**KATHERINE FARRIS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2024-0617

[April 2, 2025]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John J. Murphy, III, Judge; L.T. Case No. 22-007483-CF10A.

Daniel Eisinger, Public Defender, and Jeffrey L. Anderson, Assistant Public Defender, West Palm Beach, for appellant.

James Uthmeier, Attorney General, Tallahassee, and Paul Patti, III, Senior Assistant Attorney General, West Palm Beach, for appellee.

GROSS, J.

Katherine Farris appeals her convictions of second-degree murder and carrying a concealed firearm. We affirm the conviction on the firearm charge, but we reverse the second-degree murder conviction for a new trial because of two prosecutorial errors which, when combined, deprived Farris of a fair trial.

First, in opening statement, in violation of previous representations, the prosecutor disclosed a fact taken from Farris's statement to the police, which never came into evidence. Second, in closing argument, the prosecutor misrepresented the State's burden of proof to obtain a second-degree murder conviction under the law of principals.

### *The Charges*

The State charged Charles Alford[1] and Katherine Farris, as principals, with second-degree murder with a firearm for the death of the victim, Terrell McCrea. Additionally, the State charged Alford with possession of a firearm by a convicted felon and Farris with carrying a concealed firearm without a license. Alford and Farris proceeded to a joint trial on the murder charge against both of them and the firearm charge against Farris, with the firearm charge against Alford being severed and tried separately following the verdicts in the joint trial.

### *The Theories at Trial*

The State's theory was that Alford was guilty of second-degree murder as the shooter and that Farris was guilty of second-degree murder as a principal because she gave him the firearm. Alford defended by attempting to raise reasonable doubt as to his identification as the shooter. Farris's theory of defense was a lack of intent—that her actions were not intended to result in the shooting of the victim.

### *The Evidence at Trial*

The incident was captured on a convenience store's surveillance videos without audio. The video was the primary evidence at trial. No direct witnesses to the shooting testified at trial. No post-arrest statements of the defendants to the police were offered in evidence. Neither defendant testified.

At about 2:49 a.m. on July 18, 2022, a male (later identified as Alford) and a female (later identified as Farris) walked into the convenience store. They purchased a Reese's Peanut Butter Cup and other items at 2:53 a.m. The transaction was completed with Farris's member rewards identification number. The cashier recalled the female's hat being "really low."

The male in the video wore white shoes, black shorts, and a black tank top. He had tattoos on his forearms, as well as a beard that was consistent with his look at the time of his arrest.

---

[1] By a separate opinion, we have affirmed Alford's convictions. *See Alford v. State*, No. 4D2024-0617 (Fla. 4th DCA 2025). The statement of facts in this opinion is similar to that involving Alford, with additions tailored to the issues which Farris raises on appeal.

The female in the video wore a camouflage cap that said "BackWoods" and a t-shirt with a cat wearing a crown. A close-up of her face appears in the video. A police officer reviewed the surveillance footage and described the female as "wearing the camo hat and the black t-shirt with the design in the front," adding that "she had very distinguishable tattoos on both her right and left thighs."

Alford and Farris exited the convenience store and walked to the bus stop around the corner. At 2:59 a.m., the victim walked past Farris at the bus stop and waited. At 3:01 a.m., Alford and another male approached Farris. Both men stood close to Farris. Alford got in Farris's face and moved his arms as if arguing with her. Farris stepped away, and the other male stepped between them. The three of them then had a conversation while facing away from the others at the bus stop. The other male walked to a vehicle while Farris and Alford appeared to talk. The other male then rejoined Farris and Alford.

At 3:03 a.m., Farris abruptly turned away from Alford and threw her cup and its contents to the ground before walking away. Farris passed by the convenience store's entrance and went out of camera range into an alley past the building. Alford and the other male briefly spoke and then followed Farris.

Between 3:04 and 3:05 a.m., Alford caught up to Farris. Shortly thereafter, Farris left the alley and walked back along the sidewalk in front of the convenience store. Farris attempted to enter the convenience store but was prevented from doing so by a worker. Alford followed Farris at a short distance.

At 3:05 a.m., Farris rounded the corner of the convenience store on the side with the bus stop. Between 3:05:51 and 3:05:54 a.m., she reached into her purse, pulled out a firearm, and placed it on the ground next to the propane tank cage. As Alford rounded the corner about a second or two later, Farris looked toward him and waved or indicated with her left hand.

Alford stopped next to the firearm, looked around, picked it up, and tucked it into his waistband. Alford then went toward the front of the convenience store and briefly moved out of camera range before turning around and walking behind the bus benches.

At 3:06 a.m., as the victim was waiting at a bus bench, Farris walked past the bench, stopped, and turned toward the victim for about ten seconds. Although the video has no sound, Farris and the victim appeared

3

to be having a conversation at a distance.  If a conversation occurred, the video is unclear as to who started the conversation, as Farris had initially walked past the victim.  This interaction prompted the victim to move his arms up slightly and take a few steps forward, while Farris turned and took a few steps away from the bus stop.

Meanwhile, as the interaction between Farris and the victim was ending, Alford walked behind the bus bench and headed toward the victim.  As Alford went around the bus bench and approached the victim, Farris turned back around and took a few steps toward the two men.  The victim turned around, faced Alford, and started backing away.  With Farris watching, Alford swung at the victim with his right hand but missed, prompting the victim to back into the roadway.

Alford then lifted his right arm and pointed a firearm at the victim.  A muzzle flash emanated from the object in Alford's hand at 3:06:28 a.m. Alford and Farris immediately left the scene in the same direction.

The victim ran away, but later collapsed in the road and died.  The cause of death was a single gunshot wound to the torso.

The police arrived on scene to investigate the shooting.  A fired casing was found in the roadway next to the bus stop.

A Broward Sheriff's investigator ran facial recognition technology on a still shot from the surveillance video and identified Alford as the male suspect with 95.7 percent accuracy.  When the convenience store's cashier was shown a series of photographs, she identified Alford with 50 percent certainty, but she identified another male with 80 percent certainty.

A vehicle of interest had moved "before and after the incident near the area of the . . . incident."  Police executed a search warrant on the vehicle at a tow yard.  Inside the vehicle, police found clothing that matched the clothing worn by the male and female subjects in the surveillance videos, including a black tank top, white sneakers, a t-shirt with a cat wearing a crown, and the camo hat with the words "BackWoods."

After the search of the vehicle in the tow yard, a Sheriff's sergeant located Alford and Farris, who were together when they were arrested.  The firearm was not recovered.

After their arrest, officers took photographs of Alford and Farris.  The photographs of Alford depict a beard and tattoos consistent with the beard and tattoos of the male suspect on the surveillance video.   The

photographs of Farris show tattoos consistent with the tattoos of the female suspect on the surveillance video.

While in jail, Farris made a phone call[2] in which she said, "I know where it's at," and "I will tell them if they make a plea bargain for me":

> OPERATOR: Hello.  This is a collect call from Katherine –
>
> FEMALE VOICE 1: (unintelligible) where that thing is at.  You understand me?
>
> FEMALE VOICE 2: What?
>
> FEMALE VOICE 1: I know where it's at.
>
> FEMALE VOICE 2: So why don't you tell them?
>
> FEMALE VOICE 1: I will tell them if they make a plea bargain for me -- you understand me.
>
> FEMALE VOICE 2: Yeah, but you should have told them that when you sat right there, when they were questioning you.  So what do you want me to tell this man, that if they can offer you a plea bargain that you can tell them -- (Dogs barking/inaudible)
>
> FEMALE VOICE 1: Yes, I will.
>
> FEMALE VOICE 2: All right, that's what I will tell the officer, I will contact the officer Monday morning at eight o'clock.
>
> FEMALE VOICE 1: (unintelligible) It ain't far.
>
> FEMALE VOICE 2: You're lucky I'm where I'm at and not in Florida 'cause I would go get it, not touch it, and call them.

### Verdict and Sentence

The jury found Farris guilty of second-degree murder with a firearm and the unlicensed carrying of a firearm.  She was sentenced to concurrent

---

[2] This is the version of the jail call from the audio exhibit, rather than the version transcribed by the court reporter.

terms of 25 years in prison on the murder charge and five years in prison on the gun charge.

### *The Trial Court Properly Denied Farris's Motion for Judgment of Acquittal*

Farris moved for judgment of acquittal on the second-degree murder charge at trial and filed a renewed motion after trial. The trial court deferred ruling on the original motion and denied the renewed motion.

On appeal, Farris argues that the evidence was insufficient to prove that she aided and abetted Alford so as to convict her as a principal in the second-degree murder.

The test for the legal sufficiency of the evidence "is simply whether the State presented competent, substantial evidence to support the verdict." *Bush v. State*, 295 So. 3d 179, 200 (Fla. 2020). This standard now applies "in all cases where the sufficiency of the evidence is analyzed." *Id.* at 201. "If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction." *Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002). "In moving for a judgment of acquittal, a defendant admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence." *Petit v. State*, 321 So. 3d 286, 290 (Fla. 4th DCA 2021) (cleaned up). All conflicts in the evidence and all reasonable inferences therefrom must be resolved in favor of the verdict on appeal. *Tibbs v. State*, 397 So. 2d 1120, 1123 (Fla. 1981).

"A trial court should rarely, if ever, grant a judgment of acquittal based on the state's failure to prove mental intent." *King v. State*, 545 So. 2d 375, 378 (Fla. 4th DCA 1989). "Direct evidence of intent is rare, and intent is usually proven through inference." *O'Flaherty-Lewis v. State*, 230 So. 3d 15, 18 (Fla. 4th DCA 2017) (cleaned up).

The State's case against Farris hinged on the law of principals, section 777.011, Florida Statutes (2022). That section states "[w]hoever . . . aids, abets, counsels, hires, or otherwise procures [an] offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such . . . ." § 777.011, Fla. Stat. (2022). To convict under a principals theory, the State is required to prove that: (1) "the defendant had a conscious intent that the criminal act be done"; and (2) "the defendant did

some act or said some word which was intended to and which did incite, cause, encourage, assist, or advise the other person or persons to actually commit or attempt to commit the crime." *Hall v. State*, 100 So. 3d 288, 289 (Fla. 4th DCA 2012).

"Mere knowledge that an offense is being committed is not the same as participation with criminal intent, and mere presence at the scene . . . is not sufficient to establish participation." *Staten v. State*, 519 So. 2d 622, 624 (Fla. 1988) (cleaned up).

For example, in *Hall,* we held that the evidence was insufficient to convict the defendant of grand theft under a principals theory where two women took cosmetic products from a CVS store and then got into a truck that the defendant had backed into a parking space. 100 So. 3d at 289. We explained that "there was no evidence the defendant had any prior knowledge of a criminal plan or had a conscious intent" that the theft be committed, as the defendant's "rather common method of parking a truck in a parking space sheds no light on whether the defendant had prior knowledge that his passengers intended to commit a crime once inside of the CVS store." *Id.*

Second-degree murder is defined as "[t]he unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual[.]" § 782.04(2), Fla. Stat. (2022). "A defendant's conduct before and after his use of deadly force may demonstrate the necessary intent." *Holmes v. State*, 278 So. 3d 301, 304 (Fla. 1st DCA 2019). To convict a defendant of second-degree murder, "it is not necessary for the State to prove the defendant had an intent to cause death." Fla. Std. Jury Instr. (Crim.) 7.4.

As a preliminary matter, we find it necessary to focus precisely on what the State was required to prove to support a conviction for second-degree murder on a principals theory. No qualifying underlying felony occurred for the application of the felony murder rule. Although the State did not need to prove that Farris had an intent to cause the *death* of the victim, the State was required to establish that (1) Farris had a conscious intent that the criminal act be done (i.e., consciously intended for Alford to commit an act imminently dangerous to another and evincing a depraved mind without regard for human life), and (2) Farris did some act which was intended to assist Alford to actually commit or attempt to commit the crime. Thus, the State was required to prove that Farris had a conscious intent for Alford to shoot the victim unjustifiably, and that Farris did some

7

act which was intended to assist him. The State was not required to prove that Farris intended the victim's death.

The trial court properly denied the motion for judgment of acquittal because the evidence, viewed in the light most favorable to the State, was sufficient to prove Farris had the conscious intent that Alford shoot the victim. The timing and sequence of events would permit a jury to reasonably conclude that that Farris intended for Alford to commit the shooting.

First, Farris placed the gun near the propane tank cage—and then appeared to look at Alford and wave or indicate to him—seconds before he retrieved the gun. A reasonable inference from this conduct is that Farris intended for Alford to have the gun and use it.

Second, almost immediately after putting the gun on the ground, Farris walked by the victim and had a brief interaction or conversation with him as Alford was approaching, suggesting that the victim had some role in the duo's future plans.

Third, the shooting occurred less than a minute after Farris put the gun on the ground for Alford. Almost immediately after Farris's interaction with the victim, she watched the shooting take place. Then, without hesitation, she joined Alford in flight from the scene. Farris did not display surprise at the shooting and took no steps to help the victim.

Fourth, Farris made a jail call suggestive of her consciousness of guilt by stating that she knew where the gun had been hidden and would disclose that information for a plea bargain.

Competent, substantial evidence supports the conclusion that Farris intended for Alford to shoot the victim. Direct evidence of intent is rare, and Farris's intent was proven through reasonable inferences from her conduct on the surveillance video. Farris's alternative interpretations of the evidence—such as that she was trying to get away from Alford, she was "trying to hide" the gun, or she may have only intended for Alford to "scare the victim" with the gun rather than to shoot—are valid arguments for a jury. But on a motion for judgment of acquittal, all conflicts in the evidence, and reasonable inferences to be drawn from the evidence, are resolved in the State's favor.

***No Fundamental Error Arose from the Court Reading an
Outdated Principals Instruction that Did Not Include
Language Indicating the Instruction's Elements Had to
Be Proven Beyond a Reasonable Doubt***

During the charge conference, Farris's counsel and the State agreed to a version of the principals instruction which the prosecutor represented to be the standard jury instruction.

However, the principals instruction given to the jury was an outdated version of the standard instruction. The outdated version did not include language specifying that the principals elements must be proven beyond a reasonable doubt. The standard jury instruction on principals was amended on December 15, 2023—about one month before trial—to include the beyond-a-reasonable-doubt language. *See* Fla. Crim. Jury Instr. 3.5(a) (Dec. 2023), comment.[3]

Farris made no contemporaneous objection challenging the absence of the "beyond a reasonable doubt" phrase within the principals instruction. Therefore, our review on this issue is for fundamental error.

Throughout trial, both the court and the parties made multiple references to the State's burden of proof beyond a reasonable doubt. The court also gave the standard instruction on reasonable doubt, which informed the jurors that the presumption of innocence "stays with the defendant as to each material allegation in the Indictment through each stage of the trial unless it has been overcome by the evidence to the exclusion of and beyond a reasonable doubt."

For a jury instruction to constitute fundamental error, "the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." *State v. Delva*, 575 So. 2d 643, 644–45 (Fla. 1991). "Where the instruction pertains to a disputed element of the offense and the error is pertinent or material to what the jury must consider to convict, fundamental error occurs." *Ramirez Ramos v. State*, 274 So. 3d 395, 397 (Fla. 4th DCA 2019) (cleaned up). For example, "fundamental error occurs where a jury instruction incorrectly defines a disputed element of the crime in such a way as to reduce the state's burden of proof." *Kennedy v. State*, 59 So. 3d 376, 381 (Fla. 4th DCA 2011).

---

[3] We note that when standard criminal jury instructions are relied upon, it is important for an attorney to compare the proposed instructions to the most recent version of the standard instructions.

But "[a] proper approach to fundamental error considers the jury instructions as a whole, in the context of the case that was tried; a proper approach does not nitpick at the instructions to manufacture a fundamental error that was overlooked by all the participants at trial." *Garzon v. State*, 939 So. 2d 278, 285 (Fla. 4th DCA 2006). For example, the failure "to instruct on an element of the crime over which the record reflects there was no dispute is not fundamental error." *Delva*, 575 So. 2d at 645.

*Dupree v. State*, 137 So. 3d 444 (Fla. 4th DCA 2014), rejected an argument analogous to the one Farris advances here. There, we disagreed with the defendant's argument that "the special interrogatory verdict form was fundamentally erroneous because it did not inform the jury that proof beyond a reasonable doubt was required for the jury to make the finding that he possessed a firearm during the commission of the offense." *Id.* at 444. We rejected the notion that "the firearm interrogatory improperly allows the jury to find the existence of the weapon enhancement element on a burden of proof less than the 'beyond a reasonable doubt' standard." *Id.*

We explained in *Dupree*: "Standard Jury Instruction 3.7 sufficed to inform the jury that a *material allegation* made in an information must be proven beyond a reasonable doubt." *Id.* (quoting *Tukes v. State*, 115 So. 3d 1014, 1015 n.1 (Fla. 4th DCA 2013)). "This instruction tells the jury to apply the same burden of proof to all aspects of the case which the state is required to prove. Considering the instructions as a whole, they are not error, let alone fundamental error." *Id.* (quoting *Ruger v. State*, 941 So. 2d 1182, 1185 (Fla. 4th DCA 2006)).

Here, the omission of the "beyond a reasonable doubt" phrase in the principals instruction did not rise to the level of fundamental error because, as the State observes, there was no dispute at trial that the beyond-a-reasonable-doubt standard applied. This is not a case where the jury instructions omitted or incorrectly defined a disputed element of the offense. The outdated standard instruction, which had been used for years, was not a misstatement of the law on principals liability. In their totality, the instructions given conveyed the concept that the State had to prove all elements of the crime, including the principals theory, beyond a reasonable doubt. The State never informed the jury that the standard of proof for principals liability was anything less than "beyond a reasonable doubt." Considering the instructions as a whole, no error occurred on this point, let alone fundamental error.

***In Opening Statement, the Prosecutor Improperly
Argued Facts That Would Not Come Into Evidence
Because of A Stipulation Between the State and the
Defendants That Was Referenced Multiple Times Before
the Trial Court***

*Background*

During opening statement, the prosecutor said that Farris was arrested and that "during Ms. Farris's questioning she admits to being at the store and arguing with [the victim]." This was significant because it gave meaning to otherwise ambiguous acts on the silent video and arguably provided a shared motive for Farris and Alford to conspire to shoot the victim.

Our exhaustive examination of the record reveals that the prosecutor represented that the State would not be using Farris's post-arrest statement to the police at trial. This was significant to pre-trial issues before the court, including severance of the defendants' trials, Alford's motion for a *Nelson*[4] hearing, and the application of *Bruton v. United States*, 391 U.S. 123 (1968). The representation was also important because it impacted the way in which the defendants prepared for trial.

At Alford's *Nelson* hearing, Alford's lawyer explained that a motion for severance was unnecessary because "the Prosecution has made it very clear that they're not going to be using that statement [i.e. Farris's statement to law enforcement]." The prosecutor did not correct the defense attorney's representation. When the trial court asked the prosecutor whether it was correct that she was "not introducing a statement from Ms. Farris," the prosecutor replied that she "was not using any statements that are going to cause any type of *Bruton* issue between the Defendants."

The trial court concluded the *Nelson* hearing by ruling that there were no "legal grounds at this point for [Alford's counsel] to file a motion to sever

---

[4] *Nelson v. State*, 274 So. 2d 256, 258–59 (Fla. 4th DCA 1973) ("[W]here a defendant, before the commencement of trial, makes it appear to the trial judge that he desires to discharge his court appointed counsel, the trial judge, in order to protect the indigent's right to effective counsel, should make an inquiry of the defendant as to the reason for the request to discharge. If incompetency of counsel is assigned by the defendant as the reason, or a reason, the trial judge should make a sufficient inquiry of the defendant and his appointed counsel to determine whether or not there is reasonable cause to believe that the court appointed counsel is not rendering effective assistance to the defendant.").

based on the representation of the State. . . . *I am satisfied it's not an issue because that statement is not going to be introduced.*" *See* Fla. R. Crim. P. 3.152(b)(2) ("If a defendant moves for a severance of defendants on the ground that an oral or written statement of a codefendant makes reference to him or her but is not admissible against him or her, *the court shall determine whether the state will offer evidence of the statement at the trial.*") (italics supplied). The prosecutor did not dispute the trial court's finding that Farris's statement to law enforcement was "not going to be introduced."

Prior to jury selection on the first day of trial, Judge Murphy noted that he had stepped in to try the case for Judge Fein. The following exchange then occurred:

> THE COURT: And did either Mr. Alford or Ms. Farris give a statement to police?
>
> [PROSECUTOR]: Yes, Judge, but I'm not using any of their statements against each other.
>
> THE COURT: So there's statements but you're not using the statements?
>
> [PROSECUTOR]: Yes.

Farris's counsel objected immediately after the prosecutor made the statement quoted at the beginning of this section. He argued that the statement violated the parties' understanding that the State would not use Farris's post-arrest statement to the police at trial. The prosecutor attempted to rewrite history by saying: "That's not what I said. I'm not introducing the video statement. I'm literally just introducing two of those things she said to the detective."

As Farris's lawyer pointed out below, *any* use of Farris's post-arrest statement to police would have required multiple pre-trial motions raising *Miranda* issues, severance, redaction issues, and whether other parts of the statement "in fairness" ought to be considered "contemporaneously" under section 90.108(1), Florida Statutes (2022), or under the common law rule of completeness.

Judge Murphy properly found that the prosecutor had represented it was not going to use the defendants' statements to police at trial, held the State to its words, and deferred ruling on the defendants' motions for

mistrial.  No evidence of Farris admitting to arguing with the victim was introduced at trial.

Farris's counsel renewed the motion for mistrial after the evidentiary portion of the trial, and the court deferred ruling on the motion but eventually denied it.

Farris's written post-trial motion renewed the motion for mistrial, relying in part on the reference at issue in the opening statement.  The State's response to the post-trial motion attached transcripts excerpts to argue that Farris's counsel misunderstood the State's representation. Continuing the pattern of lack of candor with the trial court, the State's attachments failed to include the prosecutor's exchange with Judge Murphy quoted above or the predecessor judge's finding at the *Nelson* hearing that Farris's statement to law enforcement "was not going to be introduced."

*Legal Discussion*

The prosecutor erred in discussing in opening Farris's statements that she agreed would not be introduced at trial.  Viewing the prosecutor's statement in isolation, we might have concluded that it was harmless error.  However, when combined with the prosecutor's misrepresentation on the law of principals in closing argument, as we discuss below, we hold that reversible error occurred at trial because we cannot say beyond a reasonable doubt that the prosecutor's two missteps had no impact upon the jury.

A prosecutor's failure to present evidence of a fact mentioned in opening statement warrants a mistrial if the reference prejudices the defendant's right to a fair trial by suggesting additional evidence of the defendant's guilt that is never subjected to cross-examination and evaluation by the jury.  *See Maddox v. State*, 827 So. 2d 380, 381 (Fla. 3d DCA 2002); *Jackson v. State*, 818 So. 2d 539 (Fla. 2d DCA 2002); *Mills v. State*, 875 So. 2d 823, 826 (Fla. 2d DCA 2004).  This is true even where a curative instruction is given.  *Hayes v. State*, 932 So. 2d 381, 382 (Fla. 2nd DCA 2006).

The prosecutor improperly stated during the opening that Farris admitted to being at the convenience store and arguing with the victim, yet the prosecution never introduced any evidence to substantiate this claim at trial.  The reason the prosecutor failed to offer evidence of this admission was because the trial court properly excluded this evidence based on the prosecutor's previous representation—immediately before

jury selection—that she was "not using the statements" that Alford and Farris had given to police.

Given this backdrop, the prosecutor's reference in opening statement to Farris's admission that she had an argument with the victim contributed to the denial of her right to a fair trial by suggesting additional evidence of her guilt—evidence of intent, ill will toward the victim, and a possible motive for the killing—that Farris never had the opportunity to contest. Farris did not invite the error, nor was it a "windfall" for her simply because the court excluded the evidence. The prosecutor created the problem. The prosecutor did not have a good faith basis for making the comment in opening statement, especially after representing on the first day of trial that she was "not using the statements" that Alford and Farris had given to police.

### *Farris was Denied a Fair Trial Where the Prosecutor Made Misleading Statements Regarding the Law of Principals Liability*

In Farris's closing argument, defense counsel conceded that Farris was in the surveillance video, asserted that Farris's "body language" showed Alford "dominating" her, disputed that Farris wanted to give Alford the gun, argued that Farris did not want the victim to die or to get shot, and suggested that even "giving someone a gun" did not make her an accomplice to murder. He argued that under the law of principals, the State had to prove that her actions on the video demonstrated "the single design and intent" that Alford shoot the victim. Counsel argued: "Look at the video and look and tell me that [Farris] wanted [the victim] shot. Impossible."

On rebuttal, the prosecutor argued that Farris did not have to have the "conscious intent" that Alford shoot the victim, or the same "criminal intent" that Alford had. Farris's lawyer objected and the court effectively overruled the objection without giving an adequate curative instruction.

"It is error for a prosecutor to misstate the law during closing arguments." *Evans v. State*, 177 So. 3d 1219, 1235 (Fla. 2015), *receded from on other grounds by Johnson v. State*, 252 So. 3d 1114, 1118 (Fla. 2018). Moreover, the fair reply doctrine does not permit the State to mislead the jury on the law in rebuttal. *See Gabriel v. State*, 254 So. 3d 558, 563 (Fla. 4th DCA 2018) ("[T]he prosecutor's argument was misleading and suggested that mere presence at the scene was sufficient to prove the crime. In short, misleading arguments are not proper rebuttal.").

14

Here, the prosecutor misstated the law twice in the rebuttal closing, and she did so in a way that reduced the State's burden of proof on a disputed element of the crime. For Farris, the key fact question for the jury was whether she placed the gun on the ground with the intent that Alford shoot the victim. The prosecutor's misstatement of the law at the end of rebuttal argument was directed at the central issue which the jury was about to decide.

While the actions of Alford and Farris were obviously different, the State had to prove the same criminal intent for both of them to convict each of second-degree murder. Both Alford and Farris had to intend the act imminently dangerous to another, demonstrating a depraved mind. Here, to convict both defendants of second-degree murder, the State needed to prove that both of them intended for Alford to shoot the victim, even if the State was not required to prove that they intended to cause the victim's death. Thus, the prosecutor's argument improperly suggested that the jury could find Farris guilty of second-degree murder with a lesser showing of criminal intent than Alford, and the court gave an insufficient curative instruction on this misleading statement of law.

"Where multiple errors are found, even if deemed harmless individually, the cumulative effect of such errors may deny to defendant the fair and impartial trial that is the inalienable right of all litigants." *Hurst v. State*, 18 So. 3d 975, 1015 (Fla. 2009) (cleaned up).

First, the prosecutor suggested that Farris could be found guilty of second-degree murder even if she did not have the conscious intent for the victim to be shot, which was a misleading statement of law.[5] The court's instruction in response to the objection was insufficient because it "left the jury with the impression that the argument may or may not have been accurate." *Ford v. State*, 50 So. 3d 799, 800 (Fla. 2d DCA 2011).

Second, the prosecutor argued that Farris "didn't have to have that criminal intent that he [the shooter]" had in order for her to be found guilty of second-degree murder, which was another misleading statement of law.

When combined with the prosecutor's mention of non-record evidence in opening, the misstatements of law in closing deprived Farris of a fair and impartial trial.

---

[5] For an explanation of why this was a misleading statement of law, see our discussion on the law of principals as set forth above.

### *Conclusion*

We have considered the other issues raised on appeal and find either no error, harmless error, or a failure of preservation. We conclude that the jail call was relevant and that the trial court did not abuse its discretion in admitting the jail call over Farris's authentication objection. We also reject the twelve-person jury issue on the authority of *Guzman v. State*, 350 So. 3d 72 (Fla. 4th DCA 2022).

We affirm the conviction on the firearm charge because the errors described above had no impact on that charge.

We reverse the second-degree murder conviction and remand to the circuit court for a new trial on that charge.

*Affirmed in part, reversed in part, and remanded.*

CIKLIN and KUNTZ, JJ., concur.

\*        \*        \*

***Not final until disposition of timely filed motion for rehearing.***