# Supreme Court of Florida

---

No. SC20-1422

---

**GRANVILLE RITCHIE,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

June 9, 2022

PER CURIAM.

Granville Ritchie appeals his convictions and sentences, including his judgment of conviction of first-degree murder and his sentence of death. We have jurisdiction, *see* art. V, § 3(b)(1), Fla. Const., and for the reasons below affirm Ritchie's convictions and sentences.

## BACKGROUND

Ritchie sexually battered and strangled to death the nine-year-old child victim in this case, F.W., who had been left in Ritchie's care by a friend of the child's family. Ritchie then dumped the

victim's body in the water off of the Courtney Campbell Causeway and fabricated a story about her disappearance. The victim's body was found washed up against the shoreline the day after she had been left alone with Ritchie, and Ritchie was later arrested and indicted on three counts of alleged crimes against the victim: (1) first-degree murder; (2) sexual battery of a victim less than twelve years of age by a defendant over the age of eighteen; and (3) aggravated child abuse. Ritchie's jury found him guilty as charged on all three counts. As to first-degree murder, the jury found that the killing was both premeditated murder and felony murder.

Although Ritchie does not concede guilt, he concedes in his initial brief that the evidence presented at trial is legally sufficient to support all three of his convictions. The trial court summarized that evidence in its sentencing order as follows:

> On May 16, 2014, [Ritchie] and Eboni Wiley picked up the child-victim, [F.W.], from her home in Tampa. Ms. Wiley was a friend of the victim's family, and she and [Ritchie] had recently become involved in a romantic relationship. After retrieving the victim from her home, [Ritchie] drove Ms. Wiley and the victim to a fast food drive-through, to get food for the child-victim, and then to his mother's apartment in Temple Terrace [where Ritchie also lived]. Upon arrival, [Ritchie] provided Ms. Wiley with "Molly," a drug similar in its effects to Ecstasy. After a short time at the apartment, [Ritchie] sent Ms.

Wiley from the apartment to procure marijuana for him. Ms. Wiley initially attempted to take the victim with her to make the purchase of marijuana. However, [Ritchie] intervened and instructed Ms. Wiley to leave the child-victim with him at the apartment because Ms. Wiley had no driver's license and would have drugs in the car. Ms. Wiley relented and agreed to leave young [F.W.] alone and in [Ritchie's] care.

While alone with [F.W.], [Ritchie] brutally attacked her, stripped her of her clothing, and sexually battered her. During the sexual battery, [Ritchie] violently inflicted blunt force injury to the victim's head and body and caused several injuries, both external and internal, to her genitals by forcefully penetrating the child-victim's vagina with his penis. In the course of the attack, [Ritchie] manually strangled the child-victim with such force that he caused extensive injuries to her neck, including damage to the deep internal muscular and cartilaginous structures. [F.W.] eventually died as a result of the strangulation. Following the victim's death, [Ritchie] proceeded to conceal his actions by hiding the victim's body from discovery and informing Ms. Wiley that the child-victim had left the apartment to buy candy at a nearby pharmacy. Not finding the child-victim at the store, Ms. Wiley returned to the apartment, where she and [Ritchie] fabricated a story concerning the victim's whereabouts. [Ritchie] also contacted his mother, and informed her that the victim was missing and advised her regarding the fabricated story, in the event she was questioned by law enforcement.

Later that evening, [Ritchie] drove Ms. Wiley back to Tampa and dropped her off. He then returned to the apartment and placed the victim's body in a rolling suitcase in order to relocate the body for disposal. [Ritchie] then rolled the suitcase out of the apartment and to the vehicle he was driving, where he placed the suitcase containing the victim's body into the trunk of

the car.  [As established by red light camera footage and cell tower data, Ritchie] then proceeded to drive away from the apartment late that night, travelling across Hillsborough County, through the City of Tampa toward Clearwater, across the Courtney Campbell Causeway.  Shortly after crossing the main bridge of the causeway, [Ritchie] entered onto a side access road running along the north side of the causeway.  After travelling approximately two miles down the access road, [Ritchie] came to an area of thick vegetation that provided concealment from the main road of the causeway.  It was at this location that [Ritchie] removed the suitcase from the trunk of the vehicle, retrieved the child-victim's body from the suitcase, and dumped her into the dark waters of the bay.  After disposing of the victim's body, [Ritchie] travelled to St. Petersburg to stay the night at the home of another girlfriend . . . .  At some point, [Ritchie] disposed of the victim's clothing and the suitcase used to transport her body.

While [Ritchie] was actively attempting to conceal any evidence of his rape and murder of [F.W.], law enforcement and the victim's family met with Ms. Wiley in Temple Terrace, near the location of the crime.  Ms. Wiley initially advised law enforcement and the victim's family as to the fabricated story concocted by [Ritchie], that she had taken the victim to visit a friend of hers, and while at that location, the child had run away from her friend's apartment.  At first, Ms. Wiley made no mention of [Ritchie] ever having involvement with the child-victim.  However, after extensive questioning by law enforcement, Ms. Wiley finally yielded, and admitted that she and [Ritchie] had taken the victim to [Ritchie's] apartment, where the child-victim disappeared while in [Ritchie's] care.  After the discovery of [Ritchie's] identity, law enforcement made contact with him and ultimately placed [Ritchie] into custody.  On May 17, 2014, [F.W.'s] body was recovered on the north side of the Courtney Campbell Causeway in Old Tampa Bay, in the same

approximate location [Ritchie] had dumped her, washed up against the rocky shoreline of the causeway.

Following the guilt-phase verdict, Ritchie's case proceeded to a penalty phase on the first-degree murder conviction. After hearing evidence and argument from the State and Ritchie, the jury unanimously found that the State had established beyond a reasonable doubt the following three aggravating factors: (1) the victim of the capital felony was a person less than twelve years of age, (2) the capital felony was committed while the defendant was engaged in the commission of a sexual battery, and (3) the capital felony was especially heinous, atrocious, or cruel (HAC). The jury further unanimously found that the aggravating factors proven by the State beyond a reasonable doubt are sufficient to warrant a possible sentence of death. One or more individual jurors found that one or more mitigating factors were established by the greater weight of the evidence. The jury then unanimously found that the aggravating factors proven by the State beyond a reasonable doubt outweigh the established mitigating circumstances. Finally, the jury unanimously recommended the death penalty.

After holding a *Spencer*[1] hearing at which neither party presented additional witnesses or evidence, the trial court followed the jury's recommendation and sentenced Ritchie to death.[2] In its sentencing order, the trial court found that the State had proven beyond a reasonable doubt all three of the aggravating factors found by the jury. The trial court assigned great weight to each aggravator and further found the aggravating factors sufficient to warrant the imposition of a death sentence. Regarding mitigation, the trial court rejected several of Ritchie's proposed statutory and nonstatutory mitigating circumstances, but found and assigned moderate weight to the statutory mitigating circumstance that Ritchie had no significant history of prior criminal activity. The trial court also found and assigned the noted weight to the following nonstatutory mitigating circumstances: (1) defendant suffered

---

1. *Spencer v. State*, 615 So. 2d 688 (Fla. 1993).

2. In addition to sentencing Ritchie to death for the first-degree murder of F.W., the trial court also sentenced Ritchie to life imprisonment without the possibility of parole for his conviction of sexual battery of a victim less than twelve years of age by a defendant over the age of eighteen, and to thirty years' imprisonment for his conviction of aggravated child abuse, with all three sentences to run consecutively.

mental and physical abuse by his father and defendant's father was often absent because of four different families (moderate weight); (2) defendant was raised in a poverty-stricken and violent neighborhood in Kingston, Jamaica (little weight); (3) defendant was the oldest of eighteen siblings and helped raised them (little weight); (4) defendant was gainfully employed at various jobs (little weight); and (5) defendant was kind and generous to others and possesses other positive redeeming qualities (little weight). In imposing the death sentence, the trial court found that the aggravating factors "heavily outweigh" the mitigating circumstances.

Ritchie now appeals.

## ANALYSIS

In this direct appeal, Ritchie challenges his sentence of death.[3] He argues that he is entitled to a new penalty phase because (1) the

---

3. Because Ritchie does not challenge his convictions or sentences for the nonhomicide crimes against the victim, we affirm those convictions and sentences without further comment. Although Ritchie also does not challenge his first-degree murder conviction, we nevertheless review the sufficiency of the evidence to support that conviction. *See* Fla. R. App. P. 9.142(a)(5) ("On direct appeal in death penalty cases, whether or not insufficiency of the evidence is an issue presented for review, the court shall review the issue and, if necessary, remand for the appropriate relief."). As Ritchie acknowledges in his initial brief, competent, substantial

cumulative impact of improper comments by the prosecutor during the penalty phase closing argument deprived him of a fair penalty phase; (2) Florida law regarding the presentation of victim impact evidence is unconstitutional on its face and as applied in his case; (3) the trial court erred in ordering audio redactions to a mitigation video submitted by Ritchie and by allowing the State to present improper rebuttal evidence to the video; and (4) the cumulative prejudicial effect of the trial errors alleged in issues one through three deprived him of a fair penalty phase.

### (1) The Prosecutor's Comments

Ritchie first argues that the cumulative impact of several improper comments by the prosecutor during the penalty phase closing argument—only one of which trial counsel objected to—deprived him of a fair penalty phase. We first analyze each of the comments. Then, as explained below, because Ritchie failed to properly preserve any issue for appeal since the trial court did not rule on trial counsel's lone objection, we consider whether,

---

evidence in the record, including the facts set forth above, supports his conviction for the first-degree murder of F.W., under both theories of premeditated and felony murder.

cumulatively, the comments we determine are improper amount to fundamental error. *See Smith v. State*, 320 So. 3d 20, 27 (Fla. 2021) ("If an issue is not preserved, it is reviewed only for fundamental error."); *see also Braddy v. State*, 111 So. 3d 810, 838 (Fla. 2012) (reviewing whether "the cumulative effect of those unpreserved comments in which we identif[ed] possible error constitute[s] fundamental error").[4]

**Mercy**

Ritchie first argues that the prosecutor improperly asked the jury to extend the "same mercy" to Ritchie that Ritchie extended to the victim. *See Brooks v. State*, 762 So. 2d 879, 901 (Fla. 2000) (explaining that "same mercy" arguments are prohibited).

In addressing the HAC aggravator during his penalty phase closing argument, the prosecutor stated, without objection:

> This isn't pleasant to think about. It isn't pleasant. It's not natural to sit here and think about this and walk through this. This is ugly. This is nastiness. But you have to think about this because you're considering what

---

4. Ritchie's initial brief was not clear as to whether, in addition to his cumulative error claim, he was also seeking reversal as a result of prejudicial error caused by each improper comment. However, Ritchie's counsel conceded at oral argument that he is only seeking relief based on cumulative error.

his penalty should be. And to ultimately, to be able to do that in an honest and fair and just manner, you have to consider what this little girl suffered and what she went through.

Remember this when you're back there deliberating. Remember this when the idea of mercy maybe starts to [percolate] a little bit up into your mind. Remember that during these several minutes at least three minutes to inflict all of these injuries to her body, remember there was never, not for one second, relief for this little girl. She never had relief during this. She was suffering in excruciating pain from . . . her genitals all the way up [to the top of her head]. There was nothing that wasn't unpleasant, painful about this murder. He absolutely brutalized her.

. . . And you can consider that when you're considering whether we have proven whether this is heinous, atrocious or cruel or torturous, because you can consider, like I said earlier, whether he exerted any mercy at all to her, any pity to her.

Shortly thereafter, while still addressing the HAC aggravator, the prosecutor stated, "[W]hen you're back there deliberating, when you're considering whether you should give him life and whether you should personally extend mercy to this defendant. Did he extend mercy to this little girl?" The prosecutor continued to argue, "Because in the heinous, atrocious [or] cruel instruction --," at which point Ritchie's trial counsel objected and requested to approach the bench.

- 10 -

During the bench conference, trial counsel moved for a mistrial, arguing that "the State has made two maybe three mercy arguments" that improperly ask the jury to "give the same mercy" to the defendant that he gave to the victim. The prosecutor responded that he had not argued that the jury should give Ritchie the "same mercy" that Ritchie gave to the victim, but that he was instead "talking about [Ritchie's] failure to exercise mercy to [the victim]," which is "part of the instruction on HAC." After hearing from counsel, the trial judge stated,

> I don't recall him saying that, but obviously relate the term mercy . . . to the context of HAC. Don't relate it to any mercy the jury may or may not show the defendant, okay.

Following the trial court's instruction, the bench conference concluded and the penalty phase continued without the trial court having ruled on either the objection or the motion for mistrial. When the prosecutor continued his argument after the bench conference, the first thing he said was, "When you're considering whether [t]he State has proven the aggravating factor of heinous, atrocious[, or] cruel, you can consider whether the defendant extended mercy to her, you can consider how pitiless the crime

- 11 -

was." Thereafter, Ritchie's trial counsel did not renew either the objection or motion for mistrial or otherwise raise the trial court's failure to rule. Trial counsel also did not request a curative instruction.

Before we address whether these comments were improper, we analyze whether Ritchie properly preserved this issue for our review. We do so because although Ritchie has raised only a cumulative error claim, and although our cumulative error analysis must "examine[] the entire closing argument, paying specific attention to the challenged comments—whether preserved or not," the standard of review differs depending upon whether an issue is preserved. *Braddy*, 111 So. 3d at 846-47 (explaining the harmless error standard of review that applies where a challenge to improper prosecutorial comments is preserved and the fundamental error standard of review that applies where the challenge is not preserved). Our precedent is clear that "[t]o be preserved, the issue or legal argument must be raised *and* ruled on by the trial court." *Rhodes v. State*, 986 So. 2d 501, 513 (Fla. 2008).

In Ritchie's case, when the prosecutor first referenced mercy, trial counsel did not contemporaneously object and thus failed to

preserve any issue with respect to that portion of the closing argument. *See Card v. State*, 803 So. 2d 613, 622 (Fla. 2001) ("As a general rule, the failure to raise a contemporaneous objection when improper closing argument comments are made waives any claim concerning such comments for appellate review.").

Later, while still reviewing the evidence that supported the HAC aggravator, the prosecutor again referenced mercy. This time trial counsel contemporaneously objected and requested a mistrial. However, contrary to our precedent requiring trial counsel to obtain a ruling on any such objection or motion, *see Rhodes*, 986 So. 2d at 513, trial counsel here failed to do so. The record before us is that the trial court did not "recall" the prosecutor having made a "same mercy" argument, but nonetheless instructed the prosecutor to "obviously relate the term mercy . . . to the context of HAC. Don't relate it to any mercy the jury may or may not show the defendant, okay."

At oral argument, Ritchie's counsel maintained that the trial court's statement effectively overruled the objection, thereby preserving his challenge to this portion of the prosecutor's argument and obviating the requirement to obtain a ruling on the

motion for mistrial. *See Robinson v. State*, 989 So. 2d 747, 750 (Fla. 2d DCA 2008) ("[T]o preserve an error founded on an objection at trial, it is necessary to move for a mistrial only when the objection is sustained, not when it is overruled. When objections are overruled, a motion for mistrial would be futile.") (citing *Simpson v. State*, 418 So. 2d 984, 986 (Fla. 1982)). We disagree with Ritchie that the trial court ruled on, let alone overruled, the objection.

On analogous facts, in a decision not cited by either of the parties, we held that an "objected-to comment was not adequately preserved" where "[t]he trial court did not sustain or overrule the objection, but asked the prosecutor to clarify his argument." *Wheeler v. State*, 4 So. 3d 599, 609 (Fla. 2009). In *Wheeler*, defense counsel objected to the prosecutor's closing argument regarding the "number of people that have been affected" by the victim's murder on the ground that the prosecutor was improperly arguing victim impact evidence as aggravation. *Id.* at 610. The prosecutor responded, "It is not in any way intended to be argued as an aggravator. It is simply for [the jury] to understand that everybody has been affected by this. And my further comment will be, that's not what they can make their decision on." *Id.* The trial court then

- 14 -

instructed the prosecutor to "[m]ake that clear and limit it as best you can," and the prosecutor clarified his argument accordingly. *Id.* We see no meaningful difference between the trial court's instruction in *Wheeler* and the trial court's instruction here.

Accordingly, because Ritchie's trial counsel failed to contemporaneously object to the prosecutor's first mercy comment and failed to obtain a ruling on his objection to the second comment, Ritchie's challenge to these comments is not preserved for our review.[5]

Although Ritchie's failure to properly preserve his challenge to the prosecutor's mercy comments precludes application of the harmless error standard of review, we write further to address

---

5. In arguing for the harmless error standard of review, Ritchie noted in his initial brief that the trial court had granted his pretrial "Motion in Limine Precluding Improper Penalty Phase Argument." However, we have previously explained that "[t]he general pretrial motion in limine does not constitute a contemporaneous objection to the prosecutor's arguments." *Wheeler*, 4 So. 3d at 609; *see also id.* at 609 n.6 (explaining that section 90.104(1), Florida Statutes, which "was amended in 2003 to make a contemporaneous objection to admission or exclusion of evidence unnecessary in order to preserve the issue for appeal where a prior 'definitive ruling' has been obtained . . . . does not apply . . . to claims of error in prosecutorial argument").

another glaring problem with Ritchie's argument in favor of that standard. The harmless error standard would only apply if the trial court had *overruled* trial counsel's objection. *See Cardona v. State*, 185 So. 3d 514, 520 (Fla. 2016) ("Where the comments were improper and the defense objected, but the trial court erroneously overruled defense counsel's objection, we apply the harmless error standard of review."). Here, the trial court *agreed* with trial counsel that it was improper for the State to argue mercy outside of asking the jury to find the HAC aggravator and cautioned the prosecutor to limit his argument accordingly before allowing the penalty phase to continue. Thus, if we could read rulings into the record, which we cannot, *see Rhodes*, 986 So. 2d at 513, we would conclude that the trial court *sustained* trial counsel's objection but denied the related motion for mistrial. On those facts, we would review for abuse of discretion, not harmless error. *See Andres v. State*, 254 So. 3d 283, 301 (Fla. 2018) (holding the trial court properly sustained defense counsel's objection to an improper comment by the prosecutor but did not abuse its discretion in denying the related motion for mistrial).

Turning to whether the prosecutor's mercy comments were improper, Ritchie correctly argues that the State may not, in seeking a recommendation of death, ask the jury to show the defendant the "same mercy" as the defendant showed to the victim. *See Brooks*, 762 So. 2d at 901.  However, the prosecutor in Ritchie's case referenced mercy while arguing for the HAC aggravator, where the mercy or lack thereof shown to the victim by the defendant is relevant.  *See Davis v. State*, 121 So. 3d 462, 497-98 (Fla. 2013) ("This Court has emphasized that in order to qualify as HAC, 'the crime must be *both* conscienceless or pitiless *and* unnecessarily torturous to the victim.' ") (quoting *Richardson v. State*, 604 So. 2d 1107, 1109 (Fla. 1992)).

Viewing the prosecutor's comments in context, the first one was not improper.  Rather, the prosecutor limited his argument to evidence that was relevant to the proper application of the HAC aggravator, namely evidence establishing that Ritchie's murder of the victim was merciless.  In contrast, in the second comment, after asking the jurors to consider whether Ritchie had extended mercy to the victim, the prosecutor also asked them to consider the lack of mercy that Ritchie had showed to the victim "when you're

considering whether you should give him life and whether you should personally extend mercy to this defendant." We acknowledge that because the prosecutor addressed mercy in the context of HAC, this argument is not as clear-cut of a violation as many of the "same mercy" arguments we have previously condemned. *See, e.g., Brooks*, 762 So. 2d at 901 ("[I]f you are tempted to show the defendants mercy or pity, I'm going to ask you show them the same mercy, the same pity that they showed [the victim] on [the day of the murder], and that is none."); *Merck v. State*, 975 So. 2d 1054, 1061-62 (Fla. 2007) (condemning as improper the prosecutor's description of the defendant's proposed mitigation as "[t]hings about [the defendant's] background they believe should warrant you affording him some mercy that he never afforded [the victim]" and the argument that "there should be no mercy for a merciless crime"). Nevertheless, the jury's ability to extend mercy to Ritchie is irrelevant to the HAC aggravator. *See Davis*, 121 So. 3d at 497-98. Similarly, whether Ritchie showed the victim mercy during the killing is irrelevant to the jury's determination as to whether to extend mercy to Ritchie. *See* Fla. Std. Jury Instr. (Crim.) 7.11 ("Regardless of the results of each

juror's individual weighing process—even if you find that the sufficient aggravators outweigh the mitigators—the law neither compels nor requires you to determine that the defendant should be sentenced to death.").  Accordingly, we conclude that the prosecutor crossed the line into improper argument when he related the jury's ability to extend mercy to Ritchie to Ritchie's failure to show the victim any mercy.

## Golden Rule Arguments

Ritchie next contends that the prosecutor made two "classic" and one "variant" golden rule arguments.  A golden rule argument is an "argument[] that invite[s] the jurors to place themselves in the victim's position and 'imagine the victim's final pain, terror and defenselessness.' "  *Merck*, 975 So. 2d at 1062 (quoting *Bertolotti v. State*, 476 So. 2d 130, 133 (Fla. 1985)).

As to the two alleged "classic" violations, Ritchie first argues that the prosecutor improperly asked the jurors, "Can you imagine the dread of knowing that your life is ending and you're feeling pain all over your body as it's bleeding internally from all of these injuries, the pain and suffering of feeling the penetration, feeling the tearing and ripping of sensitive tissue . . . .  And that pain would

have been exponentially greater for a little girl, a little, innocent girl." Second, Ritchie argues that the prosecutor made an improper golden rule argument by inviting the jury to "go back" to the minute of silence he had included in his guilt-phase closing argument to demonstrate how long Ritchie would have choked the victim while waiting for her to die.

As we have explained, "The State can comment on the crime as long as the comments 'are based on evidence introduced at trial and are relevant to the circumstances of [the crime] or relevant aggravators,' but may not 'cross the line by inviting the jurors to place themselves in the position of the victim.' " *Braddy*, 111 So. 3d at 842 (quoting *Mosley v. State*, 46 So. 3d 510, 521 (Fla. 2009)). In Ritchie's case, viewing the arguments in the context in which they were made, we hold that the first, but not the second, argument was an improper golden rule argument.

Both arguments were clearly made in support of the HAC aggravator, to which the victim's suffering and the defendant's indifference to the victim's suffering are relevant. *See Merck*, 975 So. 2d at 1062-63. However, in the first argument, the prosecutor did not simply use pronouns like "you" and "your" while recounting

- 20 -

what the evidence showed about the victim's injuries and suffering; rather, he expressly asked the jurors whether they could "imagine" what it would be like if that was happening to them. *Cf. Braddy*, 111 So. 3d at 843 (recognizing that the prosecutor's "repeated use of the pronoun 'you' *suggests*" an improper invitation for the jurors to place themselves in the victim's position) (emphasis added). Moreover, after asking the jurors to "imagine" Ritchie's attack on the victim happening to them, the prosecutor went further, stating "that pain would have been exponentially greater for a little girl." We find these comments, taken together and in context, impermissibly asked the jurors to imagine pain to themselves, and to compare that pain to an idea of what the victim must have felt. Such an argument "inviting the jurors to place themselves in the position of the victim," *Braddy*, 111 So. 3d at 842 (quoting *Mosley*, 46 So. 3d at 521), is precisely what the rule prohibits.

In contrast, in his second argument, the prosecutor appropriately focused on asking the jury to consider what the evidence showed as to the length of the attack and what the victim experienced while Ritchie was compressing her neck. *See Merck*, 975 So. 2d at 1064 ("invit[ing] the jurors to vividly imagine how long

a minute could feel . . . did not invite the jurors to place themselves in the victim's position").

Ritchie also claims, and the State appears to concede, at least in part, that an "imaginary script" variant violation of the rule occurred when the prosecutor improperly asked the jury to put the prosecutor's "own imaginary words in the victim's mouth." *Urbin v. State*, 714 So. 2d 411, 421 (Fla. 1998), *receded from on other grounds by Lawrence v. State*, 308 So. 3d 544 (Fla. 2020). Specifically, the prosecutor made the following argument regarding evidence presented during the guilt phase establishing that a 911 call, on which nothing from the caller could be heard before the call disconnected, was made from Ritchie's phone during the time period that the victim was alone with Ritchie:

> [S]he wouldn't have made a call to 9-1-1 unless this little girl was so scared as to be scared out of her mind.
>
> And as we talked about, the innocence, the vulnerability of children, their fear is a heightened level of fear, a special kind of fear. This is before this man laid hands on her. And we know that because she was able to get his phone and make this call. Maybe he had fondled her or kissed her or taken her clothes off or had started doing something to her, but he wasn't strangling her to death at this point. This is well before that. That's -- This is well before the multiple minutes of suffering

physically and emotionally that she went through with strangulation and rape.

But even before all of that, when you're back there deliberating on this verdict . . . I want you to consider that call and consider the fear that that little girl must have been experiencing even before he put a hand on her. And that was just the beginning of the attack, that's just the beginning.

In that call, I asked you a couple of days ago if you could hear the fear in her silence. I'd ask you now, can you hear the echoes in that call of the screams that came after that and the crying and the pain and the anguish that reverberated off the walls of that empty apartment.

Although portions of the State's argument, including that the victim experienced pain, confusion, and fear during the attack, could reasonably be inferred from the evidence presented, there was no evidence establishing when the 911 call was made relative to the attack, including whether the call was made before or after any kissing, fondling, or undressing had occurred, or what the victim's state of mind was during the call. We agree with Ritchie that attempting to fill the silence of the 911 call with such improper speculation violates the "imaginary script" variant of the prohibition on golden rule arguments. *See Urbin*, 714 So. 2d at 421 (holding that "the prosecutor . . . went far beyond the evidence in emotionally creating an imaginary script" for the murder).

- 23 -

**Comment on Right to Jury Trial and Anti-Immigrant Sentiment**

Next, Ritchie claims that the prosecutor improperly commented on his exercise of his right to a jury trial and improperly encouraged the jury to recommend a death sentence based on anti-immigrant sentiment. Immediately prior to making the comments that Ritchie claims are improper, the prosecutor had been addressing certain mitigation submitted by Ritchie, including witness testimony about Ritchie's family in Jamaica and a video that Ritchie had submitted to depict the conditions in the area of Jamaica where he lived for a number of years. Specifically, the prosecutor had argued:

> Now, I'm not going to sit up here and tell you that where he grew up in the garrison and Kingston, Jamaica is some up scale neighborhood, it clearly is not, it clearly is not. We have neighborhoods like that here in this country. . . . [T]hey are call[ed] ghettoes or slums. We have high crime areas . . . .
>
> . . . .
>
> So [Ritchie] was raised in a status and privileged position as the son of the Don or Dan of this garrison. He enjoyed that privilege.
>
> You saw a bunch of really not horrible but kind of rundown neighborhoods, but then you see this beautiful high school that he went to . . . that he had to make good

grades to get into . . . [and that] his privilege helped him get into the school.

This defendant was raised with privilege. This defendant was able to get a GED or a[n] equivalent of a high school diploma. And then we know this defendant was able to immigrate to this country. I believe the one lady in the video called it migrating.

Immediately thereafter, the prosecutor continued his argument with the following comments, which Ritchie contends are improper:

He immigrated here to this country years ago. And as he lived here, he enjoyed the benefits of this country we live in, the greatest country on the face of the earth.

He enjoyed all these benefit[s] we talked about. He enjoyed the due process rights we talked about. He enjoyed the fact that we carry the burden of proof to prove his guilt, that he is presumed innocent, that he is entitled to a jury of his peers to not just determine whether he's guilty or not, but a jury of his peers to determine the appropriate sentence. Because this isn't Jamaica or some other country, this is the United States where this defendant gets to have you determine his sentence, not some bureaucrat, not some single judge, not some single person, not some star chamber, but you, his fellow citizens. He [has] enjoyed all of these benefits. He's enjoyed the benefit of a neutral and unbiased judge. He's enjoyed the benefit of competent -- very competent defense counsel during this case.

After making these comments, which Ritchie now challenges, the prosecutor immediately continued, "So we know he was able to

pull himself up out of that situation, move here where he had all these opportunities to this country. And we saw how he took advantage of those opportunities. He took advantage of them by manipulating all these women in his life . . . ."

Although portions of the prosecutor's comments, which we will address below, are improper, viewed in context, the argument does not amount to an improper comment on Ritchie's exercise of his right to a jury trial. The prosecutor certainly referenced the right, but we have previously recognized that "referencing" the right to a jury trial will not always cross the line into an improper comment. *Evans v. State*, 177 So. 3d 1219, 1236 (Fla. 2015) ("referencing" the right to a jury trial "may at times fall within the 'wide latitude' that is given to attorneys during closing arguments" (quoting *Merck*, 975 So. 2d at 1061)), *receded from on other grounds by Johnson v. State*, 252 So. 3d 1114 (Fla. 2018). In *Evans*, we explained that error occurs where the prosecutor's remarks "negatively reflect[] upon [the defendant's] exercise of his constitutional right." *Id.* For example, in *Evans*, the prosecutor's comment crossed the line because it was "specifically directed at [the defendant's] decision to seek a jury trial despite the significant incriminating evidence

- 26 -

against him" and "suggested that he wasted the time of the court and the jury by seeking a jury trial." *Id.* In contrast, in Ritchie's case, the prosecutor addressed the right to a jury trial in a positive fashion in describing how far Ritchie had come from his troubled life in Jamaica without negatively reflecting upon Ritchie's exercise of that right or any other constitutional right. Accordingly, we disagree with Ritchie that the challenged argument constitutes an improper comment on Ritchie's exercise of his right to a jury trial.

We agree with Ritchie, however, that portions of the prosecutor's argument went too far. Ritchie's proposed nonstatutory mitigation put at issue his background, including his experiences in Jamaica and his emigration. Similarly, his proposed statutory mitigator of substantial impairment, *see* § 921.141(7)(f), Fla. Stat. (2021), allowed the prosecutor to address evidence showing that Ritchie had the ability to manipulate others and, in the prosecutor's words, the ability to "pull himself up out of [his] situation" in Jamaica. However, the fact remains that *Ritchie was not on trial in Jamaica.* Thus, it was improper for the prosecutor to comment about the Jamaican legal system or to compare it to the legal system in the United States.

In the same vein, we find particularly troubling another comment, which Ritchie also mentions in his brief, where the prosecutor compared Ritchie's "comfortable" life while awaiting trial in jail, to what his life would have been like had he been on trial in Jamaica. Referring to Ritchie's ability to have his girlfriend deposit money in his jail canteen account, which Ritchie used to purchase food that allowed him to gain weight while awaiting trial, the prosecutor argued, "You really think that would happen in Jamaica? You think that would happen in the countries of the Caribbean? It happens here in this country because he enjoyed all those rights, the constitutional rights."

We agree with Ritchie's argument on appeal that such irrelevant comparisons served no purpose except to imply that he had "bit the hand that fed him." *See Bertolotti*, 476 So. 2d at 134 ("The proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence. Conversely, it must not be used to inflame the minds and passions of the jurors so that their verdict reflects an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law."). To

- 28 -

the extent the prosecutor's rhetoric could be taken as anti-immigrant, we condemn such rhetoric in the strongest possible terms; it has no place in our courts.

**President Reagan**

Ritchie next argues that, by comparing his difficult childhood to the difficult childhood experienced by the late President Ronald Reagan, the prosecutor improperly attached an aggravating label to a mitigating factor and improperly appealed to the jury's emotions. *See Walker v. State*, 707 So. 2d 300, 314 (Fla. 1997) ("[T]he State may not attach aggravating labels to factors that actually should militate in favor of a lesser penalty . . . ."); *Ruiz v. State*, 743 So. 2d 1, 6-7 (Fla. 1999) (holding that the prosecutor's request for "jurors to do their duty as citizens just as her own father had done his duty for his country in Operation Desert Storm" was a "blatant appeal to jurors' emotions"). We disagree.

The Reagan comparison did not improperly ask the jury to consider mitigation as aggravation. Rather, the prosecutor made the comments at issue in the context of arguing the appropriate *weight* that the jury should give to Ritchie's proposed mitigation related to his difficult and abusive childhood where the record also

showed that Ritchie had been able to "pull himself up out of [his] situation" in Jamaica by immigrating to the United States. *See Bush v. State*, 295 So. 3d 179, 211 (Fla. 2020) (finding no error where, in comparing the defendant's difficult childhood to the evidence that the defendant "had the ability to pull himself out of all of that stuff from his childhood," "the prosecutor consistently framed his comments in terms of the amount of weight that the jury should assign"); *see also Fletcher v. State*, 168 So. 3d 186, 215 (Fla. 2015) (recognizing that although prosecutors "may not ask the jury to compare the life choices of the victim with the life choices of the defendant," this Court's precedent does not "stand[] for the proposition that a prosecutor cannot make broad statements that other people in the community with the same background or characteristics as the defendant do not commit murder"). Nor is the prosecutor's Reagan comparison remotely similar to the impermissible appeal to the jurors' emotions that occurred when the prosecutor in *Ruiz* asked the jurors to do their moral duty by returning a recommendation for death just as her own heroic father had done his duty by serving in Operation Desert Storm despite also having cancer. *Ruiz*, 743 So. 2d at 6-7.

**Speculation Regarding Mitigation Video**

Ritchie also claims that the prosecutor improperly speculated as to what defense mitigation witnesses would have said on cross-examination. *See Hutchinson v. State*, 882 So. 2d 943, 953 (Fla. 2004) ("Improper bolstering occurs when the State . . . indicates that information not presented to the jury supports the witness's testimony."), *abrogated on other grounds by Deparvine v. State*, 995 So. 2d 351 (Fla. 2008); *Thompson v. State*, 318 So. 2d 549, 551-52 (Fla. 4th DCA 1975) (explaining that it is improper for the prosecutor to imply that he possesses additional knowledge or information about the case that was not disclosed to the jury). Specifically, when addressing the individuals who were interviewed for a video that Ritchie presented in mitigation, the prosecutor argued:

> Neither of them, none of them, not a one of them was subjected to cross-examination about what their potential biases would be, their potential motives would be, what their past is, what their relationship is to the defendant other than a little blurb up there. None of them were subjected to the testing, the due process testing that this defendant was able to receive all through this trial. We didn't get that. We weren't afforded that. We didn't get an opportunity and you didn't get an opportunity to hear what we may have asked them and what they may have told us if we had cross-examined

them.  You got a light-most-favorable-to-the-defendant version of facts about him.

We disagree that this argument constitutes improper speculation as to how these individuals would have testified had they been cross-examined, let alone the improper bolstering prohibited by *Hutchinson* or a suggestion, contrary to *Thompson,* that the prosecutor had additional information that was not presented to the jury.  Rather, the prosecutor accurately stated that these individuals had not been subjected to cross-examination.  Moreover, the prosecutor's argument as to not knowing what possible biases or motives the people on the video may have had was supported by evidence presented during the penalty phase, namely the testimony of a witness who suggested that the people who were interviewed for the video may have been motivated by Ritchie's father's status in their community.

**True and Just Verdict**

In his final challenge to the prosecutor's penalty phase closing argument, Ritchie takes issue with the following argument:

> These aggravating circumstances, as I said, they tower because they are giant pillars of proof, they really are.  They are like mountains of proof with deep running, deep foundations that support them; the kind of proof,

the kind of aggravating factors you can stand on in determining that this defendant should be sentenced to death; the kind of evidence that would support that decision and give you the firm belief and knowledge that it's the true and just verdict in this case; and it allows your decision to be one that you can live with for the rest of the day, for the rest of the week, for the rest of this year and for the rest of your lives knowing you did the right and just thing sentencing this defendant to death.

Having reviewed the closing argument in its entirety, we find no error because the prosecutor was not arguing, contrary to *Urbin*, 714 So. 2d at 421, that "any juror's vote for a life sentence would be irresponsible and a violation of the juror's lawful duty." Rather, after explaining why the aggravation was sufficient to support a recommendation of death and why the aggravation outweighed the mitigation, the above comments constituted the prosecutor's argument as to why the jury should determine that the death penalty was an appropriate sentence. At no point during the prosecutor's argument did he improperly argue that the jury could not lawfully recommend a life sentence.

### Cumulative Error

As explained above, the prosecutor's closing argument included an erroneous "same mercy" argument, presented two improper golden rule arguments, and improperly expressed anti-

immigrant sentiment. However, because none of these issues were properly preserved for our review, and because Ritchie's sole claim on appeal with respect to these comments is one of cumulative error, he is entitled to new penalty phase only if the combined prejudice resulting from these errors amounts to fundamental error. *See Braddy*, 111 So. 3d at 838.

Fundamental error "reaches down into the validity of the trial itself to the extent that a . . . jury recommendation of death could not have been obtained without the assistance of the alleged error." *Card*, 803 So. 2d at 622 (citing *McDonald v. State*, 743 So. 2d 501, 505 (Fla. 1999)). As we have recently reiterated, "Defendants have no constitutional due process right to correct an unpreserved error, and appellate courts should 'exercise . . . discretion under the doctrine of fundamental error very guardedly.' " *Smith*, 320 So. 3d at 27 (quoting *Sanford v. Rubin*, 237 So. 2d 134, 137 (Fla. 1970)). In *Smith*, we explained that "[c]ourts correct errors as fundamental despite a party's failure to conform to procedural rules regarding preservation" where necessary " 'to protect the interests of justice itself.' " *Id.* (quoting *Maddox v. State*, 760 So. 2d 89, 98 (Fla. 2000)); *see also Calloway v. State*, 210 So. 3d 1160, 1191 (Fla.

2017) ("Fundamental error must amount to a denial of due process, and consequently, should be found to apply where prejudice follows.").

In Ritchie's case, the interests of justice do not require a new penalty phase. The improper prosecutorial comments were isolated statements in an otherwise proper closing argument that, on the whole, asked the jury to return a death recommendation based on the evidence. Ritchie's jury was properly instructed by the trial court, including as to the HAC aggravator and that Florida law never requires a juror to recommend death. The State proved substantial aggravation, with two of the three aggravators having been established by the jury's guilt phase verdict. Based on the evidence presented during the guilt and penalty phases, the third aggravator, HAC, was never in doubt. In comparison, the trial court found minimal mitigation. On the record before us in this substantially aggravated and minimally mitigated case involving the rape and murder of a nine-year-old child, we cannot say that, but for the cumulative impact of the improper prosecutorial comments, the jury could not have recommended a sentence of death. Thus,

we cannot conclude that cumulative fundamental error occurred. *See Braddy*, 111 So. 3d at 838.

Review of our prior decisions undertaking cumulative error analyses—where, unlike in Ritchie's case, at least some of the issues were properly preserved—underscores why. For example, in *Braddy*, 111 So. 3d at 855-56, we declined to find "cumulative fundamental error" in a heavily aggravated and minimally mitigated case involving comparable "golden rule" violations and other improper argument. Similarly, in the heavily aggravated and minimally mitigated case of *Card*, 803 So. 2d at 623, we reviewed the entire closing argument, which included an erroneous "conscience of the community" argument, and held that, cumulatively, the "closing argument errors did not compromise the integrity of the judicial process and did not deprive Card of a fair penalty phase hearing." *See also Merck*, 975 So. 2d at 1064 (holding the defendant "received a fair penalty-phase proceeding" following cumulative review of an improper mercy argument that had been "objected to" and "unobjected-to improper arguments" comparing the number of books and magazines the defendant had read in prison, which was presented as mitigation, with the number

of books and magazines the victim could have read had he not been murdered).

In sum, we cannot say that the improper arguments precluded Ritchie's jury from making a reasoned assessment based on the evidence so as to amount to a denial of due process. Rather, viewing the record in its totality, it was the evidence of Ritchie's horrific and senseless crimes against the victim, not the prosecutor's missteps, that secured the recommendation of death.

Accordingly, we reject Ritchie's claim that, cumulatively, errors in the prosecutor's penalty phase closing argument require a new penalty phase.

### (2) Victim Impact Evidence

In his second claim, Ritchie raises facial and as-applied constitutional challenges to the presentation of victim impact evidence. We deny relief as to both claims.

We have previously rejected facial challenges like Ritchie's claim that admitting victim impact evidence probative of "the victim's uniqueness as an individual human being and the resultant loss to the community's members by the victim's death," § 921.141(8), Fla. Stat. (2021), violates the United States and

Florida Constitutions. *See Windom v. State*, 656 So. 2d 432, 438 (Fla. 1995). Although Ritchie asks us to reconsider our decision in *Windom*, his arguments do not persuade us that our precedent is "clearly erroneous." *State v. Poole*, 297 So. 3d 487, 507 (Fla. 2020); *see also McKenzie v. State*, 333 So. 3d 1098, 1105 & n.3 (Fla. Feb. 2022) (explaining that admission of the victim impact evidence authorized by section 921.141(8) "is consistent with the Supreme Court's decision in *Payne v. Tennessee*, 501 U.S. 808 (1991)" (quoting *Victorino v. State*, 127 So. 3d 478, 496 (Fla. 2013))).

In his as-applied challenge, Ritchie argues that a portion of the victim impact evidence presented through the victim's mother exceeded the scope of permissible victim impact evidence. The victim's mother concluded her testimony by reading the following Bible verse: "If anyone causes one of these little ones, those who believe in me, to stumble, it would be better for them to have a large milestone [sic] hung around their neck and to be thrown in the depths of the sea." She then stated, "That scripture is talking to someone that knows better. And Granville Ritchie knew better."

On appeal, the State properly concedes that this testimony exceeds the scope of relevant victim impact evidence.

*See* § 921.141(8) ("Characterizations and opinions about the crime, the defendant, and the appropriate sentence shall not be permitted as part of the victim impact evidence."). However, because trial counsel did not contemporaneously object below, we review the admission of this evidence for fundamental error. *See Sexton v. State*, 775 So. 2d 923, 932 (Fla. 2000) ("The failure to contemporaneously object to a comment on the basis that it constitutes improper victim testimony renders the claim procedurally barred absent fundamental error.").

Considering the totality of the record, we agree with the State that the admission of this improper testimony does not constitute fundamental error. The testimony was a small portion of otherwise permissible victim impact evidence. It did not become a feature of the penalty phase; the State did not mention it in its closing argument; Ritchie's jury was correctly instructed as to victim impact evidence, including that it "may not consider [victim impact] evidence as an aggravating factor," and that "[n]o facts other than proven aggravating factors may be considered in support of a death sentence"; and the trial court did not rely on the improper testimony in sentencing Ritchie to death. In this highly aggravated

and minimally mitigated case, we cannot conclude that the "jury recommendation of death could not have been obtained without the assistance of" the improper victim impact testimony and therefore cannot hold that its erroneous admission constitutes fundamental error. *Card*, 803 So. 2d at 622.

### (3) Mitigation Video

In his third claim, Ritchie raises two challenges related to his mitigation video. First, he argues that the trial court abused its discretion by ordering, over trial counsel's objection, certain audio redactions to the video. The point of the video was to depict the area of Jamaica where Ritchie lived and establish mitigation concerning his difficult upbringing. The trial court ordered *audio* redactions to certain portions of the video which addressed events that it concluded were either not part of the relevant timeframe or lacked a sufficient nexus to the relevant timeframe, but it still permitted defense counsel to show the video. Ordering such limited audio redactions was well within the trial court's discretion, and we reject Ritchie's argument that the trial court improperly excluded relevant evidence. *See Snelgrove v. State,* 107 So. 3d 242, 254 (Fla.

2012) ("A trial court's admission or exclusion of evidence under section 921.141 is reviewed for abuse of discretion.").

Second, Ritchie argues that the State presented improper rebuttal to the video. To rebut the evidence put forth by Ritchie regarding his difficult upbringing, the State called Georgette Redley, a native of Jamaica from the same area as Ritchie, who immigrated to the United States in 2005, but who regularly returns to visit Jamaica. The trial court overruled Ritchie's objection that one portion of Redley's testimony about how community leaders live and are viewed in the area constituted improper speculation. Although he did not argue this below, Ritchie now contends that Redley "was permitted to speculatively provide the jury with irrelevant, prejudicial, and misleading information" in several additional respects. Our review of the record, however, shows that Redley's testimony was appropriately limited to either the specific or general matters with which she was familiar. Moreover, even accounting for the redactions to Ritchie's mitigation video, Redley's testimony was limited to matters raised by the defense. Accordingly, there was no error, preserved or otherwise, in the State's rebuttal presentation.

### (4) Cumulative Prejudice

In his last claim, Ritchie argues that the cumulative prejudice of all the alleged trial errors addressed above entitles him to a new penalty phase. Because we have held that the trial court did not err with respect to the mitigation video and because no other issue was preserved for our review, to analyze this claim, we consider whether the combined prejudice resulting from any errors in the prosecutor's closing argument together with the erroneous admission of improper victim impact testimony amounts to fundamental error. *See Smith*, 320 So. 3d at 27 ("If an issue is not preserved, it is reviewed only for fundamental error."). We hold that it does not. The aggravation in Ritchie's case includes HAC, which is "one of the weightiest aggravating circumstances in Florida," *Jeffries v. State*, 222 So. 3d 538, 550 (Fla. 2017), and Ritchie committed the capital felony while sexually battering a nine-year-old child. As the trial court found, the aggravators "greatly outweigh" the scant mitigation, and although we recognize that the State easily could have avoided the errors that occurred below and that similar errors, particularly if preserved, might be outcome-determinative in a closer case, Ritchie's case is simply not one

where the "jury recommendation of death could not have been obtained without the assistance of" the errors addressed in issues one and two. *Card*, 803 So. 2d at 622. Accordingly, we reject his cumulative prejudice claim.

## CONCLUSION

For the foregoing reasons, we affirm Ritchie's convictions and sentences.

It is so ordered.

CANADY, C.J., and LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.
POLSTON, J., concurs in result.
LABARGA, J., concurs in part and dissents in part with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., concurring in part and dissenting in part.

I fully concur with the majority's decision to affirm the judgment of conviction of first-degree murder. However, because of the cumulative, unnecessary, inflammatory, and improper statements of the prosecutor during his penalty phase closing argument, I dissent to the majority's affirmance of the sentence of death and would require a new sentencing hearing.

The purpose of closing argument is to afford counsel an opportunity "to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence." *Merck v. State*, 975 So. 2d 1054, 1061 (Fla. 2007). Conversely, as noted by the majority, "[closing argument] must not be used to inflame the minds and passions of the jurors so that their verdict reflects an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law." Majority op. at 28 (quoting *Bertolotti v. State*, 476 So. 2d 130, 134 (Fla. 1995)). While attorneys are permitted wide latitude in closing arguments, they are not permitted to make improper argument. *See Gore v. State*, 719 So. 2d 1197, 1200 (Fla. 1998).

Here, the prosecutor made improper comments during his penalty phase closing argument by making a "same mercy" argument, violating the well-established prohibition on "golden rule" arguments, and commenting on Ritchie's exercise of his constitutional rights in the context of anti-immigrant sentiments.

"Same mercy" arguments urge "the jury to show a defendant the same amount of mercy as he showed his victim," and they carry the danger of "unnecessarily appeal[ing] to the sympathies of the

jury" to obtain a death sentence. *Conahan v. State*, 844 So. 2d 629, 641 (Fla. 2003). When arguing that a murder is especially heinous, atrocious, or cruel (HAC) for the purpose of establishing the HAC aggravator, a prosecutor may discuss a defendant's lack of conscience or pity with respect to the means and manner of death. *See Cruz v. State*, 320 So. 3d 695, 728 (Fla. 2021) ("The HAC aggravator applies to murders that are both 'conscienceless or pitiless and unnecessarily torturous to the victim.' " (quoting *Francis v. State*, 808 So. 2d 110, 134 (Fla. 2001))). However, such comments must still avoid becoming "same mercy" arguments. While addressing the HAC aggravator in the present case, the prosecutor stated, "I want you to think about this, again, when you're back there deliberating, when you're considering whether you should give him life and whether you should personally extend mercy to this defendant. Did he extend mercy to this little girl?"

This comment is improper because it urges the jury to consider Ritchie's lack of mercy outside of the HAC context, places the question in the context of the jurors' mercy, and specifically requests that they consider it when personally deciding to extend mercy. Although presented in the form of a rhetorical question, the

prosecutor's comments here ultimately urge the jury to base its own exercise of mercy on Ritchie's lack of mercy to the victim.

As noted by the majority, the trial court, during a bench conference addressing the prosecutor's comment, agreed with trial counsel that it was improper for the State to argue mercy outside of asking the jury to find the HAC aggravator. Before allowing the penalty phase to continue, the court cautioned the prosecutor to limit his argument accordingly. *See* majority op. at 16.

In addition to the improper "same mercy" argument, the prosecutor also made a long-prohibited "golden rule" argument. "Golden rule arguments are arguments that invite the jurors to place themselves in the victim's position and 'imagine the victim's final pain, terror and defenselessness.'" *Merck*, 975 So. 2d at 1062 (quoting *Bertolotti*, 476 So. 2d at 133). As explained by the majority, "[t]he State can comment on the crime as long as the comments 'are based on evidence introduced at trial and are relevant to the circumstances of [the crime] or relevant aggravators,' *but may not 'cross the line by inviting the jurors to place themselves in the position of the victim.'*" Majority op. at 20 (quoting *Braddy v. State*, 111 So. 3d 810, 842 (Fla. 2012)) (emphasis added). The

prohibition on "golden rule" arguments is so engrained in our jurisprudence that this Court has cautioned that even a prosecutor's repeated use of the pronoun "you" suggests an improper invitation for the jurors to place themselves in the victim's position. *See Braddy*, 111 So. 3d at 843.

Here, the prosecutor rhetorically asked the jury: "Can you *imagine* the dread of knowing that your life is ending and you're feeling pain all over your body as it's bleeding internally from all of these injuries, the pain and suffering of feeling the penetrating, feeling the tearing and ripping of sensitive tissue. . . ." (Emphasis added.) In doing so, the prosecutor clearly crossed the line by requesting the jury to "imagine" what the victim was experiencing— the classic "golden rule" argument. As noted by the majority, "the prosecutor did not simply use pronouns like "you" and "your" while recounting what the evidence showed about the victim's injuries and suffering; rather, he expressly asked the jurors whether they could '*imagine*' what it would be like if that was happening to them." Majority op. at 20.

The prosecutor then compounded his error with the statement "that pain would have been exponentially greater for a little girl."

- 47 -

Majority op. at 21. As correctly observed by the majority, "these comments, taken together and in context, impermissibly asked the jurors to imagine pain to themselves, and to compare that pain to an idea of what the victim must have felt. Such an argument 'inviting the jurors to place themselves in the position of the victim is precisely what the rule prohibits.' " Majority op. at 21 (citation omitted).

Moreover, within an argument designed to capitalize on anti-immigrant sentiment, the prosecutor improperly commented on Ritchie's exercise of his right to a jury trial.

I agree with the majority that simply referencing the right to a jury trial will not always cross the line into an improper comment, *see* majority op. at 26 (citing *Evans v. State*, 177 So. 3d 1219, 1236 (Fla. 2015)), and that referencing the right to a jury trial "may at times fall within the 'wide latitude' given to attorneys during closing arguments." *Id.* (quoting *Merck,* 975 So. 2d at 1061). However, given the nature of the public discourse about immigrants at that time, I disagree with the majority's assessment of the impact of the prosecutor's discussion of Ritchie's right to a jury trial—a

- 48 -

discussion that occurred within the prosecutor's commentary about Ritchie's immigrant background.

According to the trial court's sentencing order, "[o]n September 26 and 27, 2019, the Court conducted the penalty phase of the trial, where the State and the defense presented testimony and evidence."[6]  Thus, the jury heard and considered the prosecutor's statements approximately ten months after the 2018 mid-term elections throughout the country, and approximately fourteen months prior to the 2020 presidential election.  The issue of immigration was a polemical, emotionally and politically charged issue that permeated the political debate throughout these elections, and Ritchie's guilt and penalty phases took place in the middle of it.

Ritchie presented mitigation evidence during the evidentiary portion of the penalty phase, including witness testimony about his family in Jamaica, and a video depicting the living conditions of the

---

6.  The sentencing order also indicated that Ritchie was found guilty of first-degree murder on the day before the penalty phase began.  Thus, both the guilt and the penalty phases were conducted in 2019.

area of Jamaica where he lived.  After portraying Ritchie as having enjoyed "a status and privileged position" in Jamaica, the prosecutor moved to the provocative topic of immigration.  The prosecutor added:

> He immigrated here to this country years ago.  And as he lived here, he enjoyed the benefits of this country we live in, the greatest country on the face of the earth.
>
> He enjoyed all these benefit[s] we talked about.  He enjoyed the due process rights we talked about.  He enjoyed the fact that we carry the burden of proof to prove his guilt, that he is presumed innocent, that he is entitled to a jury of his peers to not just determine whether he's guilty or not, but a jury of his peers to determine the appropriate sentence.  Because this isn't Jamaica or some other country, this is the United States where this defendant gets to have you determine his sentence, not some bureaucrat, not some single judge, not some single person, not some star chamber, but you, his fellow citizens.  He [h]as enjoyed all of these benefits.  He's enjoyed the benefit of a neutral and unbiased judge.  He's enjoyed the benefit of competent—very competent defense counsel during the case.

While Ritchie's proposed nonstatutory mitigation put at issue his background and life in Jamaica, and while his proposed statutory mitigation of substantial impairment permitted the prosecutor to counter with evidence that Ritchie had the ability to manipulate others and the ability to "pull himself up out of [his] situation in Jamaica," as aptly noted by the majority, "the fact

- 50 -

remains that *Ritchie was not on trial in Jamaica.* Thus, it was improper for the prosecutor to comment about the Jamaican legal system or to compare it to the legal system in the United States." Majority op. at 27.

The majority also found "particularly troubling" the prosecutor's comment where he compared Ritchie's "uncomfortable" life while awaiting trial in jail, to what his life would have been like had he been on trial in Jamaica. Majority op. at 28. The prosecutor continued to emphasize Ritchie's supposed privileged life while in jail awaiting trial, arguing that his ability to have his girlfriend deposit money in his jail canteen account enabled him to purchase food that allowed him to gain weight. The prosecutor added: "You really think that would happen in Jamaica? You think that would happen in the countries of the Caribbean? It happens here in this country because he enjoyed all those rights, the constitutional rights." Majority op. at 28.

Despite its concerns, the majority concluded that the prosecutor's argument did not constitute "an improper comment on Ritchie's exercise of his right to a jury trial." Majority op. at 27. However, the majority's conclusions ignore that such commentary

- 51 -

presents a danger that the jury considered Ritchie's immigrant status, a national hot button emotional issue during the penalty phase of this case, in its decision to recommend a sentence of death. By highlighting his immigrant status and then comparing Ritchie's treatment and constitutional rights in the United States to his hypothetical treatment and rights were he in Jamaica, the prosecutor created a narrative that Ritchie was an immigrant who was ungrateful for the opportunities afforded him by the United States. As observed by the majority: "We agree with Ritchie's argument on appeal that such irrelevant comparisons served no purpose except to imply that he had 'bit the hand that fed him.' " Majority op. at 28.

## FUNDAMENTAL ERROR

"Fundamental error 'reaches down into the validity of the trial itself to the extent that a . . . jury recommendation of death could not have been obtained without the assistance of the alleged error.' " Majority op. at 34 (quoting *Card v. State*, 803 So. 2d 613, 622 (Fla. 2001). In *Smith v. State*, 320 So. 3d 20, 27 (Fla. 2021), as observed by the majority, we explained that "[c]ourts correct errors as fundamental despite a party's failure to conform to procedural

rules regarding preservation" where necessary "to protect the interests of justice itself." Majority op. at 34-35. What is more, "[f]undamental error must amount to a denial of due process, and consequently, should be found to apply where prejudice follows." Majority op. at 35 (quoting *Calloway v. State*, 210 So. 3d 1160, 1191 (Fla. 2017)).

The majority concluded that "the prosecutor's closing argument during the penalty phase included an erroneous 'same mercy' argument, presented two improper golden rule arguments, and improperly expressed anti-immigrant sentiment." Majority op. at 33. However, because in the majority's view, none of these issues were properly preserved for our review, Ritchie is entitled to a new penalty phase only if the combined prejudice resulting from these errors amounts to fundamental error. *See* majority op. at 34. Ultimately, in concluding that the cumulative effect of these egregious errors did not amount to fundamental error, the majority found that "the interests of justice do not require a new penalty phase" because "[t]he improper prosecutorial comments were isolated statements in an otherwise proper closing argument that,

on the whole, asked the jury to return a death recommendation based on the evidence." Majority op. at 35. I strongly disagree.

In *Bertolotti*, this Court cautioned against using closing argument to "inflame the minds and passions of the jurors so that the verdict reflects an emotional response to the crime or the defendant." 476 So. 2d at 133. In the present case, the prosecutor's multiple improper and egregious statements were clearly designed to inflame the mind and passions of the jury. These comments were far from isolated statements. The prosecutor dedicated substantial time to his "same mercy" argument to ensure that the jury grasped his improper implications. With complete disregard for this Court's well-settled jurisprudence prohibiting "golden rule" arguments, he dedicated even more time to making sure the jury would "*imagine* what it would be like if that was happening to them." Finally, in a thinly veiled effort to stoke anti-immigration sentiment, the prosecutor, as noted by the majority, improperly created a narrative that portrayed Ritchie as "bit[ing] the hand that fed him." Majority op. at 28.

While the majority's condemnation of the prosecutor's "rhetoric" as "[having] no place in our courts" is a step in the right

direction, majority op. at 28, simply condemning the prosecutorial misconduct does not go far enough "to protect the interests of justice itself" as contemplated by this Court in *Smith*. The egregiousness of the prosecutorial misconduct in this case reaches down into the validity of the penalty phase itself, and it cannot be said that the jury's recommendation of death could not have been obtained without the assistance of such error.

The majority suggests that because, "based on the evidence presented during the guilt and penalty phases, the third aggravator HAC, was never in doubt," the erroneous comments made by the prosecutor would not have changed the outcome anyway. Majority op. at 35. This is a familiar position that this Court has taken in cases involving prosecutorial misconduct during closing argument. Such conclusions are speculative at best. For instance, in death penalty cases, prior to October 2016, Florida juries were not required to render a unanimous recommendation that a defendant be sentenced to death.[7] It was not unusual for this Court to affirm

---

7. In 2016, this Court held that jury recommendations of death require a unanimous vote. *See Hurst v. State,* 202 So. 3d 40 (Fla. 2016), *receded from in part in State v. Poole,* 297 So. 3d 487 (Fla. 2020). In 2017, the Florida Legislature codified the unanimity

death sentences handed down by trial judges with, in some instances, up to five jurors recommending a life sentence—even in highly aggravated cases such as this case. Thus, the suggestion that the mere presence of the traditionally weighty HAC aggravator would have ensured a death recommendation is speculative at best.

Additionally, the majority's position sends a strong message to prosecutors that the stronger their case, the stronger the likelihood their improper statements, regardless of their egregiousness, will pass muster. This Court must come to terms with the fact that our long-established prohibitions against "same mercy" arguments, "golden rule" arguments, and arguments designed to stoke anti-immigration sentiment are there to be followed. And, when they are not, there must be consequences. We cannot continue to overstate the applicability of our procedural rules, or the requirements of fundamental error, in order to ignore the prosecutorial misconduct that the majority agrees occurred in this case. Lawyers, whether

---

requirement in section 921.141(2)(c), Florida Statutes (2017). *See* ch. 2017-1, Laws of Fla. Although this Court receded from the unanimity requirement in *Poole*, section 921.141(2)(c) has not been amended.

prosecutors or defense attorneys, are officers of the Court and, as such, must follow the law. The prosecutor in this case chose to ignore the law.

"[P]rosecutors, like all lawyers, have ethical responsibilities. *Most significant among these is a duty to seek justice.*" *Lewis v. State*, 711 So. 3d 205, 208 (Fla. 3d DCA 1998) (emphasis added) (citing *Kirk v. State*, 227 So. 2d 40, 43 (Fla. 4th DCA 1969)). This duty must not be overshadowed by the prosecutor's interest in obtaining a particular outcome—in this instance, a sentence of death.

The evidence in this case established that Ritchie committed a horrific murder, and I fully concur in the majority's decision to affirm his conviction for first-degree murder. It is in light of this horrific crime, though, that the prosecutor was duty-bound to take great care—to ensure that the jury's recommendation of life or death was based on the facts and not on inflammatory and improper arguments.

One needs to look no further than the majority's repeated condemnation of the prosecutor's arguments to conclude that the multiple egregious instances of prosecutorial misconduct in this

case constituted fundamental error.  Because fundamental error

has been established, a new penalty phase is in order.

I, respectfully, dissent.

An Appeal from the Circuit Court in and for Hillsborough County,
    Deborah Michelle Sisco, Judge
    Case No. 292014CF011992000AHC

Howard L. "Rex" Dimmig, II, Public Defender, Rachel Paige Roebuck
and Steven L. Bolotin, Assistant Public Defenders, Tenth Judicial
Circuit, Bartow, Florida,

    for Appellant

Ashley Moody, Attorney General, Tallahassee, Florida, and Rick A.
Buchwalter, Assistant Attorney General, Tampa, Florida,

    for Appellee